STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Michael John GAVIGAN, Defendant-Appellant.†

Supreme Court

*No. 81–1735–CR. Argued January 7, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 571.)

---

† Motion for reconsideration denied, without costs, on April 12, 1983.

For the plaintiff-petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief (in court of appeals) was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief (in this court) and oral argument by *Donna L. Hintze,* assistant state public defender.

WILLIAM G. CALLOW, J. This review arises out of an unpublished decision of the court of appeals which reversed a judgment of conviction for second-degree sexual assault and remanded the matter to the circuit court for a new trial. The judgment of conviction was entered by the circuit court for Milwaukee County, Judge Michael J. Skwierawski.

On August 31, 1980, S.E., an adult, reported to the police that she had been sexually assaulted in her apartment by a man named Mike. The next day a criminal complaint was filed charging Michael Gavigan with second-degree sexual assault in violation of sec. 940.225(2)(a), Stats.[1] Following his arrest and a preliminary examination, Gavigan was bound over for trial on September 15, 1980.

S.E. indicated during the preliminary examination that she was a virgin before being sexually assaulted by Gavigan. Prior to trial the state advised the court that it planned to introduce evidence of S.E.'s virginity. Defense counsel objected to the admission of such evidence on the ground that it involved the victim's prior sexual conduct and, therefore, must be excluded under sec. 972.11, Stats. Defense counsel informed the court that, if the virginity evidence was admitted, he would seek to present evidence that S.E. had gonorrhea but that Gavigan did not. The gonorrhea evidence should be ad-

---

[1] Sec. 940.225(2)(a), Stats., provides:

"SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony:

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

mitted, argued defense counsel, because it refutes S.E.'s claim of virginity.

The trial court ruled that evidence of S.E.'s virginity was relevant and would be admitted. In response to defense counsel's objection under sec. 972.11, Stats., the court agreed to instruct the jury that the virginity evidence was not an opinion as to the victim's prior sexual conduct but, rather, was offered to prove only S.E.'s physical condition and state of mind. The court refused to admit the gonorrhea evidence offered by the defendant on the ground that it involved S.E.'s prior sexual conduct and, therefore, must be excluded under sec. 972.11. The court also ruled that, although the gonorrhea evidence may have some probative value as to S.E.'s credibility, that value was outweighed by its prejudicial effect. Thus the gonorrhea evidence had to be excluded under sec. 904.03, Stats., as well.

Both S.E. and Gavigan testified at trial. Their accounts of the incident differ in several material respects. S.E. testified that at approximately 4 a.m. on August 31, 1980, she awoke to the sound of someone banging on a door down the hall. A short time later she heard the banging on her door and got up to investigate. She asked who it was, and the person responded that his name was Michael (Gavigan). After Gavigan explained that he had been locked out of his apartment and was unable to contact the manager, S.E. invited him to stay on her couch. Gavigan accepted. S.E. provided Gavigan with linens and then went to her bedroom. Shortly thereafter Gavigan came to her bedroom doorway, nude, and said he wanted to stay with her. Feeling threatened by the situation, S.E. told Gavigan that he should stay on the couch. Gavigan then stated that he wanted to have sexual intercourse with S.E. and began to remove her clothing.

Once she was nude, S.E. testified that she moved towards the window intending to scream. Before she

reached the window, Gavigan grabbed her by the throat and told her that, if she screamed, he would really hurt her. S.E. agreed to touch Gavigan if he would not touch her. S.E. testified that Gavigan soon became impatient with her. A struggle ensued and S.E. landed on the floor with Gavigan on top of her. Gavigan picked her up and put her on the bed. Holding her down, Gavigan then had sexual intercourse with S.E. without her consent. She testified that the sexual intercourse was very painful.

Following the act of intercourse, Gavigan fell asleep. S.E. remained in her apartment with Gavigan waiting for her neighbor, Eugene Frank, to come home. When Frank arrived, she left the apartment and went to him for help. Frank removed Gavigan from S.E.'s apartment and took S.E. to the hospital. The police were called at 3 p.m. the same day.

Gavigan testified that early in the morning on August 31, 1980, he went to his ex-wife's apartment and knocked on the door. As he knocked he observed a woman (S.E.) down the hall looking out from her apartment. Getting no response, he went down to S.E.'s apartment and knocked on her door. When S.E. answered, Gavigan gave his name and explained that he had been unable to rouse his friends who lived down the hall. He then asked if he could use her telephone. She said that it was quite late to awaken his friends and suggested instead that he spend the night on her couch.

S.E. got some linens for Gavigan and then returned to her bedroom. Shortly thereafter, S.E. told Gavigan that he did not have to stay on the couch. He then entered her bedroom and they began kissing. He removed her clothing and his underwear. Gavigan testified that he did not threaten S.E. and she did not resist. According to Gavigan, S.E. voluntarily engaged in sexual acts leading up to and including sexual intercourse. Gavigan stated that in response to S.E.'s request he gave her

two hickeys on her neck. Gavigan denied that he choked S.E. and stated that she gave no indication the intercourse was painful. When the sexual acts were completed, they kissed and went to sleep.

The next thing Gavigan knew Eugene Frank awakened him and accused him of raping S.E. Gavigan denied the charge. Frank then called a cab for Gavigan and Gavigan left.

Dr. Nathan Hilrich, the doctor who initially examined S.E. after the incident, testified that he observed a small tear in S.E.'s hymen, broken blood vessels, clots of blood, and that the labia of S.E.'s vagina was swollen and red. Dr. Hilrich further testified that the tear in the hymen had occurred within the previous twelve hours, there had been a forcible entry into S.E.'s vagina by a penis, and that S.E. would have experienced severe pain when the penetration occurred. Dr. Hilrich opined that S.E. was a virgin prior to the incident and that the red marks on her neck were not hickeys but, rather, were bruises caused by the pressure of soft tissue against a hard object. S.E. had also testified earlier that she was a virgin prior to the sexual assault.

On May 21, 1981, the jury found Gavigan guilty of second-degree sexual assault. Gavigan was sentenced on June 8, 1981, to five years in prison. A notice of appeal was filed by Gavigan on September 9, 1981.

On appeal Gavigan argued that the trial court erred in admitting evidence of S.E.'s virginity and excluding evidence of gonorrhea. The state conceded that admission of the virginity evidence violated sec. 972.11(2)(b), Stats., but argued that the error was harmless. The court of appeals recognized that consent was a critical issue in the case and noted that the jury may well have inferred that, because S.E. was a virgin, she was unlikely to consent to sexual intercourse. Thus the court held that the error was not harmless and reversed the judg-

ment of conviction. The state sought and we granted review of the decision of the court of appeals.

The issue presented on this review is whether the trial court's admission of testimony by S.E. and Dr. Hilrich relating to S.E.'s virginity was error and, if so, whether the error was harmless.

Historically, evidence of a victim's reputation for chastity and prior sexual conduct was held admissible in a sexual assault case on the grounds that it was relevant to her credibility and to the likelihood of her consent. This conclusion was based on the notion "that a woman of previous unchaste character is more likely to consent to an act of sexual intercourse than is a woman who is strictly virtuous." *Kaczmarzyk v. State,* 228 Wis. 247, 249, 280 N.W.2d 362 (1938). *State v. Muhammad,* 41 Wis. 2d 12, 20, 162 N.W.2d 567 (1968).

In recent years, however, this reasoning has been largely abandoned. Many courts and state legislatures have recognized that a complainant's consent or lack of consent to sexual intercourse with third parties on other occasions is not a reliable indicator as to whether she consented to have intercourse with the defendant. Furthermore, evidence of a complainant's prior sexual conduct is generally prejudicial and bears no logical correlation to the complainant's credibility. Therefore, such evidence should ordinarily be excluded at trial.

In order to preclude the admission of prior sexual conduct evidence, several states, including Wisconsin, have enacted what are commonly known as rape shield laws. Wisconsin's rape shield law is found in sec. 972.11 (2) (b), Stats., and provides:

"If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the

course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

"1. Evidence of the complaining witness's past conduct with the defendant.

"2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

"3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness."

The fact that evidence may not be admitted to show a complainant's prior sexual conduct does not necessarily, however, preclude its admission for another purpose. Evidence relating to a complainant's prior sexual conduct may be admitted in a sexual assault case only if the following conditions are met: First, the evidence must serve to prove a fact independent of the complainant's prior sexual conduct which is relevant to an issue in the case. Second, the probative value of the evidence must outweigh any prejudice caused by its relation to the complainant's prior sexual conduct.[2] The burden of establishing these criteria[3] is on the party offering the evidence. Third, upon request the jury's consideration of the evidence must be limited to the pur-

---

[2] We read sec. 972.11(2)(b), Stats., as being a legislative determination that ordinarily evidence of a complainant's prior sexual conduct has low probative value but high prejudicial effect. Thus such evidence may be admitted for a permissible purpose only after close judicial scrutiny.

[3] These criteria for admission are in accord with sec. 971.31(11), Stats., which provides:

"In actions under s. 940.225, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial."

pose for which it was admitted in accordance with sec. 901.06, Stats., which provides:

> **Limited admissibility.** When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

The instruction should state the limited purpose of the evidence and inform the jury that the evidence may not be considered as indicating the complainant's prior sexual conduct.

Gavigan contends that on two separate occasions during the trial, the court erred in admitting testimony that S.E. was a virgin. On direct examination S.E. testified as follows:

> "Q  What did you say?
> "A  I said no. That—excuse me. I said no. That I never did that with anyone.
> "Q  What did you mean?
> "A  I never made love to any one.
> "Q  You were 23 years old and you were a virgin?
> "A  Yes."

Later in the trial when Dr. Hilrich testified about his examination of S.E., the following dialogue occurred:

> "Q  Doctor, based on your observations do you have an opinion concerning whether or not she was a virgin at the time that this occurred to her?
> "A  Yes, she was a virgin."

The state concedes the trial court erred in admitting into evidence these direct references to S.E.'s virginity. We agree. Sec. 972.11(2)(b), Stats., precludes the admission of "any evidence" pertaining to a complainant's prior sexual conduct or reputation. Nothing in the stat-

ute limits its applicability to prior affirmative acts. Rather, the plain meaning of the words "prior sexual conduct" includes the lack of sexual activity as well. Accordingly, we conclude a statement that a woman is a virgin is necessarily a comment on the woman's prior sexual conduct. The two references in question do not fall within any of the three exceptions listed in sec. 972.11(2)(b). Nor do they establish any fact independent of the complainant's prior sexual conduct which is relevant to an issue in the case. Therefore, the virginity testimony was inadmissible under the statute.

Indirect references to a complainant's virginity are also generally inadmissible. *State v. Clark*, 87 Wis. 2d 804, 275 N.W.2d 715 (1979), was a sexual assault case in which the complainant testified, over defense objection, that she had never had sexual intercourse prior to the incident in question. On review, the state conceded that the trial court erred in admitting such testimony. We agreed, noting that "[s]ec. 972.11(2)(b), Stats., excludes, with certain exceptions not here relevant, evidence of the complainant's prior sexual conduct in prosecutions under sec. 940.225, Stats."[4] *Id.* at 817. That the word virgin was not used is immaterial. The statement clearly conveyed to the jury that the complainant was a virgin.

Gavigan complains that S.E. made several indirect references to her virginity at trial. On direct examination the prosecutor asked S.E. how she responded when

---

[4] The complainant in *Clark* also testified, without objection, that she had never seen a penis before the incident, the defendant broke her hymen, and that she answered, no, when the defendant asked her whether she had ever had sex before. Any objection to this testimony was waived because it was not raised at trial. We held that the admission of the above testimony mitigated the effect of the testimony objected to by the defendant. Therefore, although it was error to admit the complainant's testimony that she had not had intercourse prior to the incident, the error was harmless.

Gavigan suggested they have sexual intercourse. S.E. testified:

"I just kept saying that—that he couldn't do that. That no one ever did it. That I didn't know how and I didn't do that."

A short time later she stated:

"He—he kept trying to pull me down to the bed to lay down next to him and I kept saying no, that I, you know, that I didn't do that. That that wasn't what I did. I wasn't that type of girl and that—and that I didn't know him and I just asked him to leave me alone."

On cross-examination S.E. again testified that she rejected Gavigan's suggestion they have intercourse, stating:

"I said I didn't do that with anyone. I don't do that. I'm not that type of girl."

Later S.E. testified:

"I said I was a Christian and that—that I didn't have intercourse. I didn't say that but I mean I said I didn't do those things."

The prosecutor also read into evidence the following portion of S.E.'s preliminary examination testimony:

"Question, 'Was—and was there any more conversation before that when you said you didn't do that on just one night?' Answer, 'I said I never had, you know, that I—I don't do that. I didn't say in one night. I said I didn't do it period.' "

The foregoing excerpts from S.E.'s testimony did indicate that she was a virgin. For that purpose they were inadmissible. They also, however, were accounts of conversation which took place between S.E. and Gavigan during the incident. Such conversation is highly probative on the issue of consent. Lack of consent is a key

element of sexual assault which must be found by the jury before a defandant may be convicted. In many sexual assault cases not involving physical trauma, the only evidence of lack of consent may be the complainant's account of her physical and verbal resistance. To exclude such testimony would be to deny the jury access to critical facts surrounding the event.

S.E.'s testimony of her conversation with Gavigan during the incident demonstrated not only her virginity but also her unwillingness to engage in sexual intercourse with him. Thus it served to prove a fact independent of her prior sexual conduct which was relevant to an issue in the case. S.E.'s statements were highly probative on the issue of consent. Furthermore, since the statements only implied her virginity, their prejudicial effect was somewhat attenuated. We conclude that S.E.'s statements could properly have been admitted with the availability of a limiting instruction upon request. The circuit court, however, after agreeing prior to trial to give a limiting instruction failed to do so following this testimony. Moreover, the limiting instruction given later in the trial was inadequate. Therefore, error occurred.

Gavigan also contends that it was error to admit Dr. Hilrich's testimony that he observed a tear in S.E.'s hymen. We have recognized that a ruptured hymen is "commonly associated in lay terms with a first act of sexual intercourse." *State v. Clark,* 87 Wis. 2d at 817–18. In this respect we agree that the hymen testimony is no less evidence of S.E.'s prior sexual conduct than the virginity testimony. Accordingly, Dr. Hilrich's testimony that S.E.'s hymen was torn was inadmissible to establish her virginity under sec. 972.11(2)(b), Stats.

Unlike the direct virginity evidence, however, the relevance of the hymen testimony was not limited to S.E.'s prior sexual conduct. Dr. Hilrich testified that the physical trauma he observed when examining S.E., including the ruptured hymen, indicated there had been forceful entry into S.E.'s vagina. In a sexual assault case physical evidence of force is highly relevant to the issue of consent and is generally admissible. Thus the hymen testimony was evidence of a fact relevant to an issue in the case which did not involve S.E.'s virginity. Like the conversation testimony, the hymen evidence was highly probative on the issue of consent. Moreover, its prejudicial effect was diminished by its indirect relation to S.E.'s prior sexual conduct. Thus it could properly have been admitted with the availability of a limiting instruction.

Following Dr. Hilrich's testimony concerning the torn hymen and his opinion that S.E. was a virgin, the trial court stated:

"The jury's instructed that that evidence is admitted only for the purpose of showing the—[S.E.'s] physical condition at the time of the events and as it may have some bearing on her state of mind. And no other purpose."

This instruction did not restrict the hymen evidence to its proper scope as required by sec. 901.06, Stats. The court failed to instruct the jury that the evidence could not be considered as indicating S.E.'s prior sexual conduct. Thus we conclude the instruction was inadequate to limit the jury's consideration of the evidence to the purpose for which it was admitted.

Having determined that the trial court erred in admitting the testimony pertaining to S.E.'s virginity, we must next consider whether the error was harmless or requires reversal. The error was nonconstitutional, in-

volving only the violation of a state evidentiary statute. In *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973), we set forth the standard for determining whether a nonconstitutional error is harmless:

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. This test is based on reasonable probabilities." *Id.* at 356 (citation omitted).

From this test it follows that "[e]rrors committed at trial should not overturn the conviction unless it appears the result might probably have been more favorable to the party complaining had the error not occurred." *Hart v. State,* 75 Wis. 2d 371, 394, 249 N.W.2d 810 (1977).

As in most sexual assault cases, there were only two witnesses to the incident in question—the alleged offender, Gavigan, and the complainant, S.E. As noted earlier both S.E. and Gavigan testified at trial. Neither witness's account of the incident was patently unbelievable. Thus the credibility of S.E. and Gavigan was critical to the case.

Gavigan argues that S.E.'s credibility was improperly enhanced by the testimony relating to her virginity, and, therefore, the error of admitting such testimony was prejudicial. We would be inclined to agree with Gavigan if there were no other evidence to support S.E.'s testimony. However, the physical evidence alone adduced at trial sufficiently strengthened S.E.'s credibility to enable the jury to find Gavigan guilty beyond a reasonable doubt.

Dr. Hilrich's testimony corroborated S.E.'s account of the incident and discredited Gavigan's version on several material points. S.E. testified that during the inci-

dent Gavigan grabbed her throat to prevent her from screaming. Gavigan testified that at S.E.'s request he gave her two hickeys, one on each side of her neck. Dr. Hilrich testified, however, that the red marks on S.E.'s neck were not hickeys but, rather, were bruises caused by the pressure of soft tissue against a hard object.

S.E. testified that Gavigan forcibly penetrated her vagina. The sexual intercourse was so painful, stated S.E., that she began to cry. Gavigan testified that the intercourse was consensual, that S.E. inserted his penis into her vagina, and that she gave no indication the intercourse was painful. Dr. Hilrich opined, based on his examination of S.E. at the hospital shortly after the incident, that there had been a forceful entry into her vagina by a penis. As support for this conclusion, Dr. Hilrich testified that, in addition to a recent tear in S.E.'s hymen, he observed a hematoma within her vaginal cavity resulting from torn blood vessels and that the labia of her vagina was swollen and red. Dr. Hilrich further testified that, when intercourse results in injuries such as those suffered by S.E., it is a painful experience.

Based on our review of the record, we conclude that there was sufficient evidence, independent of and uninfluenced by the testimony as to S.E.'s virginity, to convict Gavigan of second-degree sexual assault beyond a reasonable doubt. We are convinced that, even if the evidence of S.E.'s virginity had been excluded, the result in this case would not have been favorable to Gavigan. Thus the error of admitting such testimony was harmless.

We next consider whether the trial court properly excluded evidence offered by defense counsel to show that S.E. had gonorrhea at the time of the incident but

Gavigan did not.[5] Gavigan argues that, once the trial court admitted evidence of S.E.'s virginity, the evidence regarding gonorrhea became relevant to rebut it. According to Gavigan, fundamental fairness and due process require that he be allowed to introduce the gonorrhea evidence to rebut the evidence of S.E.'s virginity. Thus the trial court abused its discretion in excluding such evidence.

We cannot agree with Gavigan on this issue. We have consistently stated that, in reviewing a trial court's admission or exclusion of evidence, we "will uphold a discretionary decision of the trial court if the record contains facts to support the decision." *Vanlue v. State,* 96 Wis. 2d 81, 92, 291 N.W.2d 467 (1980). Gonorrhea is commonly associated with prior sexual conduct. The record indicates that defense counsel intended the gonorrhea evidence to indicate S.E.'s prior sexual conduct and thereby rebut her claim of virginity. For this purpose, the gonorrhea evidence was inadmissible under sec. 972.11(2)(b), Stats. The fact that the trial court improperly admitted evidence of S.E.'s virginity does not open the door to the admission of other evidence precluded by the statute. Furthermore, since we conclude that the improper admission of the virginity evidence did not affect the outcome of the trial, Gavigan has no basis for arguing that the exclusion of the gonorrhea evidence deprived him of a fair trial.

A defendant is, of course, entitled to admit evidence relating to a complainant's prior sexual conduct for a permissible purpose under the test set forth earlier in

---

[5] Because the court of appeals held that admission of the virginity testimony was reversible error, it did not determine whether it was error to exclude the gonorrhea evidence. Our disposition of the virginity evidence issue renders the gonorrhea evidence issue appropriate for review.

this opinion. In the instant case, however, the record indicates that the gonorrhea evidence would not serve to prove a fact independent of the complainant's prior sexual conduct which was relevant to an issue in the case. Furthermore, the record supports the trial court's conclusion that the prejudicial effect of such evidence would have outweighed its probative value. Therefore, the gonorrhea evidence was properly excluded by the trial court.

*By the Court.*—The decision of the court of appeals is reversed.

HEFFERNAN, J. *(dissenting)* I dissent because the majority has flouted the express language of a legislative enactment and has subverted the legislature's will. Because the majority apparently feels uncomfortable with the result that following the legislative direction would compel, it capriciously sets that direction aside and embarks upon a discursion into a realm of fantasy which produces a conclusion that satisfies the majority's preference in this particular case.

The legislature has explicitly stated that, in sexual assault cases, "any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence . . ." subject to three enumerated exceptions. Sec. 972.11(2)(b), Stats. The purposes of such rape shield laws include protecting the complaining witness from public exposure of her private life and preventing the trial from focusing on the prior sexual experience or lack of experience of the complaining witness rather than upon the facts of the incident in question.

The majority states that "[e]vidence relating to a complainant's prior sexual conduct" may be admitted if it serves to "prove a fact independent of the complain-

ant's prior sexual conduct which is relevant to an issue in the case . . ." and two further conditions are satisfied. (*Supra* at 157) According to the majority, evidence of prior sexual conduct may be admitted if the trial court determines that it is relevant to an "independent" issue in the case and that it is not excessively prejudicial. This is a judicial fabrication that flies in the teeth of the legislative enactment. The majority's pronouncement is contrary to the language of sec. 972.11 (2) (b), Stats., which provides that evidence concerning the complainant's prior sexual conduct shall not be admitted. The acceptance of this unfounded standard, created out of whole cloth by the majority, will defeat the very purposes of the rape shield law.

The majority asserts that the criteria for admission which are intended to apply only to the legislatively ordained exceptions to the rape shield law are to be applied indiscriminately to all proffered evidence of prior sexual conduct. It is impossible for this writer to conjure up any justification for such an erroneous reading of the statute.

A perusal of the statute reveals that it is only the legislatively ordained exceptions to the rule of absolute inadmissibility, which appear in sec. 972.11(2)(b), Stats., that are subject to the rule that the trial judge shall determine admissibility on the basis established by sec. 971.31(11)—that the proffered evidence is in respect to a material fact and "of sufficient probative value to outweigh its inflammatory and prejudicial nature . . ."

Thus, it is apparent that a trial court has, if it abides by the test of sec. 971.31(11), Stats., the discretion only to admit evidence of (1) the complaining witness' past conduct with the defendant; (2) specific instances of sexual conduct showing the source or origin of semen, pregnancy, or disease, for use in determining the de-

gree of sexual assault or the extent of injury suffered; and (3) prior untruthful allegations of sexual assault made by the complaining witness.

These are the only exceptions that the legislature has permitted to the rule that any evidence of prior sexual conduct is inadmissible. And even these exceptions are only admissible when the trial court has in its discretion concluded that the materiality and probativeness of the evidence outweighs the prejudice that would follow the admission of the evidence. Yet by a process not explained, the majority jumps to the unwarranted conclusion that any evidence of prior sexual conduct may be admissible if, in the discretion of the trial court, the probativeness of the evidence outweighs its prejudicial effect. This is incorrect, because the majority ignores the fact that the legislature has stripped a trial judge of all such discretion except that which may be exercised in respect to the types of prior sexual conduct that are made conditionally admissible by sec. 972.11 (2) (b). Discretion may be exercised only in respect to those specified types of evidence. Even the exceptions are to be rigorously tested before they are deemed to be admissible. All other evidence of prior sexual conduct is barred absolutely.

The statute represents a considered legislative determination that prior sexual conduct evidence, subject to limited stated exceptions, is irrelevant or, if relevant, that its probative value, ipso facto, is outweighed by its prejudicial effect. In *Milenkovic v. State,* 86 Wis. 2d 272, 279, 272 N.W.2d 320 (Ct. App. 1978), the court of appeals acknowledged that courts had, at an earlier time, concluded that a woman who is "previously unchaste" is more likely to consent to an act of sexual intercourse than is a woman who is "strictly virtuous." The court rejected that view. It also rejected the view that prior sexual conduct is relevant to credibility.

The majority notes that sec. 972.11 (2) (b), Stats., is "a legislative determination that ordinarily evidence of a complainant's prior sexual conduct has low probative value but high prejudicial effect." (*Supra* at 157, n. 2) The statute actually shows that the legislature determined that evidence of prior sexual conduct has such low probative value and such a highly prejudicial effect that it must be excluded except in regard to the enumerated circumstances. The majority does not attack this legislative determination, yet it allows such evidence to be admitted even when those circumstances are not present.

Evidence of prior sexual conduct was never, and could never be, admitted simply to prove prior sexual conduct, because that is never an issue in a sexual assault case. It was admitted only because courts at one time thought it was relevant to issues such as consent and credibility. The rape shield law is a legislative declaration that such evidence is not admissible, no matter to what issue the trial court believes it is relevant.

Under the majority's formulation, evidence of prior sexual conduct can once again be admitted by trial courts at the request of the state or, as the majority fails to perceive, at the request of the defendant. This substantially nullifies the protection which the legislature intended to afford rape victim complainants. It will also result in the admission of evidence which tends "to afford the trier of the fact an opportunity for distraction that suggests abandoning the duty to consider the evidence." *Milenkovic,* 86 Wis. 2d at 281.

In this case, none of the exceptions permitted by sec. 972.11 (2) (b), Stats., were present. Therefore, evidence of the complaining witness' prior sexual conduct was inadmissible. The trial court, as the result of the legislature's mandate, had no discretion to exercise. The evidence was excluded by statute.

The majority properly finds error in the admission of evidence by the complaining witness that she was a virgin before the incident and in the testimony by Dr. Hilrich that, in his opinion, the complainant was a virgin prior to this incident. However, it finds that the doctor's testimony concerning his observation of a recent tear in the complainant's hymen would have been admissible if a proper limiting instruction had been given.

The majority acknowledges that the doctor's testimony concerning the hymen tear was evidence of prior sexual conduct. That is true in this case because Dr. Hilrich made it clear that he believed the tear resulted from the complainant's first experience of sexual intercourse. The majority states, however, that the testimony relating to the hymen tear was evidence of force and, thus, was relevant to the issue of consent.

The hymen may be torn by consensual or non-consensual penile penetration, as well as by other causes. There is no evidence of record that this particular hymen tear was more likely caused by non-consensual than consenual penetration. Therefore, evidence of the hymenal tear was not relevant to the issue of consent. Dr. Hilrich testified that, from his observations, he could say that there was forceful entry into the vagina. He did not specify that this conclusion was based on the nature of the hymen tear rather than on the hematoma and the swelling of the labia which he also observed.

On cross-examination, Dr. Hilrich testified that the only way a hymen can be torn is by forceful dilatation, that is, inserting something larger than the opening. He also indicated that first intercourse usually ruptures the hymen. Unless first intercourse is usually non-consensual, this testimony means that first intercourse is usually "forceful" because it involves the insertion of an object larger than the opening in the hymen, which usually results in a tear. Apparently, Dr. Hilrich would

expect any first intercourse to result in evidence of what he called "forceful entry." Thus, his testimony did not mean that the defendant forced the complainant to have intercourse. Even if evidence of a hymen tear, *arguendo*, might be relevant in another sexual assault case, in this case it was not shown to be relevant.

The complainant's accounts of her conversations with the defendant stand on a different ground. They are properly viewed not as evidence of prior sexual conduct, but as evidence of what took place between the individuals in respect to showing consent or lack of consent. A person faced with unwanted sexual advances may do or say a variety of things to avoid the attack. A woman might tell her assailant, for example, that she was pregnant, or had venereal disease, or that she was a virgin —whether or not these claims were true—in order to discourage a perceived threat. This type of statement may be admissible. The trial judge must, of course, under the rules that apply to the admissibility of all potentially prejudicial evidence, determine that it is relevant to consent and that its probative value outweighs its prejudicial effect. Because a jury may draw conclusions about the complainant's prior sexual conduct from such testimony, a cautionary instruction must be available to restrict the testimony to its proper scope. Such an instruction was not given in this case.

The trial court erroneously admitted evidence of the complainant's prior sexual conduct consisting of testimony by the complainant and a doctor that she was a virgin and testimony by the doctor about the hymen tear. This evidence was highly prejudicial. The court also erred by failing to give proper limiting instructions in respect to the conversation between the complainant and the defendant.

The prejudicial nature of Dr. Hilrich's testimony was emphasized by the trial court's "limiting instruction."

The court instructed the jury that the testimony concerning virginity was admitted to show the complainant's physical condition as it may have bearing on her state of mind. This encouraged the jury to make the impermissible inference that the complainant's virginity—her physical condition—was relevant to whether she consented—her state of mind.

The prejudicial effect of the virginity evidence was magnified by the remarks of the prosecutor in his opening and closing statements.[1] In the opening statement, he said that the complainant was a virgin and that the person that had intercourse with her "tore her open." In closing argument, the prosecutor said the complainant was naive and he referred to her virginity several times. He questioned whether she would have consented in the situation the defendant described saying, "[a]nd on the basis of that kind of persuasion, she sacrifices her virginity that she for some reason had maintained for 23 years. Your virginity may not have meant much to you, but I think it means quite a lot to her, and it did." Again, on rebuttal, the assistant district attorney asked the jury to consider the reasonableness of the defendant's argument, "This woman—she's 23 years old, a virgin. She's sleeping in her apartment. She hears knock, knock, knock down the hall and gets up and decides, 'It's time to lose my virginity.' "

This argument actively encouraged the jury to draw the forbidden inference that the complainant's virginity meant that she did not consent. It brought the virginity evidence to the jury's attention, increasing the probability that the jury used the virginity testimony as evidence of the complainant's credibility. The majority simply ignores the inflammatory statements of the prose-

---

[1] Section 972.11 (2) (b), Stats., also forbids *references* to the complainant's prior sexual conduct.

cutor that were rather clearly calculated to prejudice the jury on the basis of inadmissible evidence.

As the majority points out, the credibility of the defendant and the complaining witness was critical to this case. The jury had to choose between two stories. The complainant admitted that she allowed a strange man into her apartment at about 4:00 a.m., that it was her idea that the defendant sleep on her couch, and that she allowed her clothing to be removed without objection. This is not to say that the complainant necessarily consented to sexual intercourse, but the complainant's own testimony could raise substantial doubts in the mind of a reasonable and uncontaminated jury.

The majority concludes that the physical evidence corroborates the complainant's testimony to such an extent that the errors in this case were harmless. The physical evidence, however, is far from conclusive. As mentioned above, when Dr. Hilrich testified that the physical evidence showed there had been forceful entry into the vagina, he did not state that, therefore, the entry was non-consensual or different from a typical first intercourse.

Dr. Hilrich testified that red marks on the complainant's neck were bruises, which was consistent with the complainant's story. On the other hand, a police officer, who interviewed the complainant shortly after the incident, testified that the marks looked like "hickeys" to her and that the complainant said she thought they came from the defendant kissing her on the neck.

The key issue in this case was consent. The physical evidence was not strong. Some of the complainant's admitted actions could raise doubts about her story. This was a close case. In a short trial, the jury heard highly prejudicial testimony from two sources. The prejudicial impact of this testimony was increased by the judge's erroneous instruction and by the improper argument of

the prosecutor. The jury very likely decided the case on extraneous factors not relating to the evidence in respect to the assault itself and in the legally mistaken belief that the complainant's credibility was enhanced by the fact that she was a virgin, and the feeling inculcated by the prosecutor that, because she was a virgin, she did not consent.

The defendant was prejudiced. The *Wold* test is not whether there was sufficient evidence to convict without the tainted evidence, but whether the jury would have done so.[2] The court of appeals was correct in concluding that the result at Gavigan's trial might probably have been favorable to him had the virginity evidence been excluded. Again, it should be emphasized that the majority's holding in this case opens the evidentiary door for the revelation of the prior sexual conduct of a person who complains of a sexual assault. The protection that the legislature sought to afford a rape victim is substantially diminished by the majority's opinion.

I would affirm the court of appeals and reverse the trial court and remand for a new trial.

I am authorized to state that CHIEF JUSTICE BEILFUSS and JUSTICE ABRAHAMSON join in this dissent.

---

[2] *Wold v. State,* 57 Wis. 2d 344, 356, 358, 204 N.W.2d 482 (1973). While the majority correctly quotes *Wold* at 356, it misapplies the *Wold* test. This court in *Wold* clearly applied the test of harmless error in respect to its effect upon a jury and did not confine its scrutiny solely to the effect that the untainted evidence would have as regarded solely from the viewpoint of an appellate court.