STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Reuben Lee MITCHELL, Defendant-Appellant.

Supreme Court

*No. 86–0879–CR. Argued April 26, 1988.—Decided June 24, 1988.*

(Also reported in 424 N.W.2d 698.)

For the plaintiff-respondent-petitioner the cause was argued by *Sally L. Wellman,* assistant attorney

general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *Louis B. Butler, Jr.,* assistant state public defender and oral argument by *Louis B. Butler, Jr.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed on April 23, 1987. The court of appeals reversed the defendant's conviction in the circuit court for Milwaukee county, Ralph Gorenstein, circuit judge. The jury had found the defendant guilty of one count of first-degree sexual assault, contrary to sec. 940.225(1)(d), Stats. 1985–86 (sexual intercourse with a person twelve years of age or younger). We reverse the decision of the court of appeals.

Two issues are raised on review. First, the defendant argues that the tests showing that the defendant had gonorrhea should have been suppressed because probable cause to obtain a search warrant for his body fluids was based on false statements that were made knowingly and intentionally or with reckless disregard for the truth. We conclude that probable cause existed to issue the search warrant without the statements that were allegedly false and made knowingly and intentionally or with reckless disregard for the truth.

Second, the state argues that it was not error, or at most harmless error, under sec. 972.11 (2), Stats. 1985–86, the rape shield law, for the complainant and her mother to testify at trial that the complainant was a virgin prior to the assault. The state also argued to this court that if sec. 972.11 (2) barred this testimony, the statute was unconstitutional as a violation of separation of powers. The court of appeals reversed

the defendant's conviction, concluding that the circuit court's decision to admit the testimony about the complainant's virginity was based on an erroneous interpretation of the rape shield law and constitutes prejudicial error. We conclude that admitting testimony about the complainant's prior sexual conduct contravened sec. 972.11 (2) and that the statute does not violate separation of powers. We further conclude that the error was harmless. Accordingly, we reverse the decision of the court of appeals.

We shall discuss each issue, and the facts relating to that issue, in turn.

## I.

The defendant, Reuben Mitchell, was charged in October 1984 with one count of first degree sexual assault, contrary to sec. 940.225(1)(d).[1] The assault occurred on July 30, 1984, in the basement of a building where the complainant, an eleven-year-old girl, was delivering newspapers. On August 30, 1984, the complainant was diagnosed as having gonorrhea. On September 18, 1984, a search warrant for the defendant's body fluids was issued. Pursuant to that search warrant, the defendant was tested for gonorrhea at Milwaukee County General Hospital by Dr. Cynthia Marquette. The test for gonorrhea proved negative.

On September 27, 1984, an assistant district attorney and police detective Thomas Gorecki sought

---

[1]"940.225 Sexual assault. (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

(d) Has sexual contact or sexual intercourse with a person 12 years of age or younger."

a second search warrant for the defendant's body fluids. At a hearing before Judge Lee Wells, Detective Gorecki testified that Dr. Marquette stated that the defendant's first sample, which had tested negative, had been put on the wrong side of the slide. Detective Gorecki further testified that he had spoken with Dr. Marquette on the day of the hearing and that she indicated that the defendant did not have a discharge on the date of the first gonorrhea test and that it is difficult to obtain a positive test for gonorrhea if the subject does not have a discharge.[2] On the basis of

---

[2]Detective Gorecki testified in relevant part as follows:

"Q: If the Judge deems fit to authorize the execution of the search warrant on the person of the defendant, would this be the first loop test or urethral swab that this defendant has gone through?

"A. [Detective Gorecki] No, it would not be.

"Q. Would you tell us about the circumstances under which he first went through this test?

"A. Approximately one week ago he was tested at County General Hospital pursuant to a search warrant, and at that time I spoke—Dr. Market [phonetic] examined him at County General emergency room.

"Q. Were you present?

"A. Yes, I was. The results of those tests were negative.

"Q. Did she, in your presence, indicate how that test went? Was it performed properly?

"A. When she received a call back from the lab, the lab stated that the sample put on the slide was put on the wrong side of the slide. I also spoke with her today, and she indicated that Reuben Mitchell did not have a discharge on that date and it is sometimes very difficult to obtain a positive test for gonorrhea if the subject does not have a discharge. It doesn't indicate that he doesn't have gonorrhea, just that the discharge wasn't there on that day.

"Q. It's fair to say that if a test for gonorrhea turns up negative, that doesn't conclusively prove that the subject doesn't have gonorrhea?

Detective Gorecki's testimony, Judge Wells issued the second search warrant. The defendant tested positive for gonorrhea on this second test.

On January 29, 1985, the defendant moved to suppress the test results of the second search warrant because on January 23, 1985, Dr. Marquette had allegedly advised the defendant's investigator that she was never informed by her laboratory that the sample had been put on the wrong side of the slide. Dr. Marquette also allegedly advised the defendant's investigator that she did not recall making any statements to Detective Gorecki about the sample being on the wrong side of the slide.

A hearing on this motion was held on February 18, 1985 before Judge Gorenstein.

Relying on *Franks v. Delaware*, 438 U.S. 154 (1978), defense counsel argued that the defendant was entitled, under the Fourth and Fourteenth Amendments of the federal Constitution, to a hearing to address defendant's assertion that testimony in support of the second search warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth.

Judge Gorenstein denied the defendant's motion, reasoning that even without the alleged misrepresentation, probable cause existed to issue the second search warrant. The circuit court concluded:

> "I don't think there is a basis here for challenging the search warrant. I think the search warrant shows probable cause and the Court finds there was. Even if Dr. Marquette would testify to that, that does not show material misrepresenta-

"A. That's correct."

tion that would vitiate the search warrant; therefore, the motion is denied."

The defendant argues that Judge Gorenstein erred when he declined to grant a hearing to determine whether the second search warrant was obtained as the result of false statements made knowingly and intentionally or with reckless disregard for the truth.

The United States Supreme Court has concluded that a defendant is not entitled to a hearing on a motion to suppress evidence obtained through a search warrant unless the defendant makes a substantial preliminary showing that a false statement made knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit and that this allegedly false statement was necessary to the finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56, 171–72 (1978).[3] See also *State v. Anderson,* 138 Wis. 2d 451, 462–65, 406 N.W.2d 398 (1987); *State v. Mann,* 123 Wis. 2d 375, 385–90, 367 N.W.2d 209 (1985). The Supreme Court held that

> "... where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false state-

---

[3] Although the *Franks* case involved search warrants based on written affidavits, the reasoning of *Franks* is applicable to sworn oral testimony reported by phonographic reporter. Sec. 968.12 (2), Stats. 1985–86, provides in relevant part that "except as provided in sub. (3), a search warrant shall be based upon sworn complaint or affidavit, or testimony recorded by phonographic reporter, showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief."

ment is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. at 155–156.

The *Franks* Court specified the requirements for a post-search challenge to the veracity of statements underlying a search warrant. First, the defendant's challenge must be "more than conclusory and must be supported by more than a mere desire to cross-examine." 438 U.S. at 171. Second, the defendant must allege deliberate falsehood or reckless disregard for the truth, and the allegations must be accompanied by an offer of proof. The allegations must point out specifically the portion of the warrant affidavit that is claimed to be false. Finally, if these requirements are met, the court should excise the alleged false statements. If the affidavit in support of the warrant is sufficient to support probable cause without the false statements, then no hearing is required. 438 U.S. 171–172.

We conclude that the defendant was not entitled to a *Franks* hearing. Ample evidence remained to establish probable cause to issue the warrant, regardless of whether the doctor told Detective Gorecki that the first test had been incorrectly performed.

Detective Gorecki testified at the hearing to obtain the second search warrant that he has investigated numerous sexual assault cases and that in his experience a subject with gonorrhea can test negative if the subject fails to have a discharge. He testified that on the day of the hearing he had spoken with Dr. Marquette (the defendant does not challenge this portion of the testimony) and that she indicated that the defendant did not have a discharge on the date of the first test. He testified that there are two gonorrhea tests: one consists of swabbing the tip of the male's urethra; the other, known as a loop test, consists of inserting a wire into the male's urethra. He testified that he knew for certain that the swab method was used but did not know whether the loop method had been used.

On questioning by Judge Wells, Detective Gorecki testified about the need for a second test when there is no discharge.

> "THE COURT: And it's been your experience as a vice squad officer that sometimes these tests are inconclusive or for different reasons, including the lack of a discharge in that occasion, subsequent tests are necessary in order to show the evidence of this kind of disease; is that correct?
>
> "A. Correct."

Detective Gorecki's testimony, excluding the statement that he was told the first specimen was put on the wrong side, supports Judge Wells' decision that there was probable cause to issue the second search warrant. Judge Wells remarked: "There has been evidence in this record as to why that first attempt to secure evidence may have failed to either get evidence or to correctly preserve the evidence. Therefore, there

is a reasonable basis to conduct this test again. There is also information that would suggest that the loop method was not utilized at that time. If that's the case, obviously that may be a better way to obtain this physical evidence."

Because the testimony upon which the search warrant was based contains sufficient information to establish probable cause without the alleged misrepresentation, no *Franks* hearing was required. We conclude, as did the court of appeals, that the circuit court did not err in denying the defendant a *Franks* hearing.

## II.

The second issue in this case is whether it was error for the circuit court to allow the complainant and her mother to testify at trial that the complainant had never had sexual intercourse before her encounter with the defendant.[4]

---

[4]During voir dire, the prosecuting attorney twice referred to the fact that the complainant had never had sexual intercourse prior to the alleged sexual contact with the defendant. During questioning of one potential juror, the prosecutor stated,

"Let me ask you this. I certainly don't presume that you had sexual experience, but I figure that many of the people on the panel have had sexual experience. Are you going to be able to keep in mind that when the young girl testifies in this case, that she is going to be testifying to something she's never done before? Will you be able to remember that?"

Shortly thereafter, the prosecutor stated again to the same juror:

". . . let me just conclude, then by asking are you going to be able to keep in mind that this young girl may be testifying about something that may be mechanically new to her?"

During direct examination by the prosecuting attorney, the complainant testified that the defendant had taken her into the basement of a building where she was delivering newspapers and had sexual intercourse with her. She further testified that she did not tell her mother about the incident until the day she went to the hospital because she had "some kind of disease." The prosecuting attorney then asked, "(H)as anybody besides (the defendant) ever done anything like this to you?" Defense counsel promptly objected and the court overruled the objection. The prosecutor repeated the question, "Has anybody else done this to you?" The complainant answered, "No."

The complainant's mother testified that she questioned the complainant about the assault. The prosecutor asked the mother whether to the best of her knowledge, the complainant had ever had any sexual contact with anyone other than the defendant. The mother answered, "No."

The defendant contends that the circuit court erred in admitting evidence of the complainant's prior sexual conduct.[5] The defendant asserts that the admis-

Defense counsel objected to the prosecutor's statements. The jury was instructed that the prosecutor's statements were not evidence.

[5]Sec. 971.31 (11) provides:

"In actions under s. 940.225, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial."

The defendant argued to the court of appeals and to this court that the circuit court erred by failing to hold a pre-trial hearing on the admissibility of the evidence of the complainant's lack of prior sexual conduct. We conclude that the evidence was inadmissible

608

sion of this evidence is prohibited by sec. 972.11 (2)(b), Stats. 1985–86, which provides as follows:

"Sec. 972.11 (2)(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

"1. Evidence of the complaining witness's past conduct with the defendant.

"2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of the injury suffered.

"3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

"(c) Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2, 3."

The defendant and state agree that under our prior cases "prior sexual conduct" includes lack of prior sexual conduct, that is, virginity. *State v. Gavigan* 111 Wis. 2d 150, 330 N.W.2d 571 (1983); *State v. Penigar,* 139 Wis. 2d 569, 408 N.W.2d 28 (1987). The defendant and state also agree that neither the first

under sec. 972.11(2), and we need not discuss whether the circuit court erred in failing to comply with sec. 971.31(11).

nor the third exception in sec. 972.11 (2)(b) applies in this case.

The first exception in sec. 972.11(2)(b) does not apply to this case. That exception applies only when the evidence shows the complaining witness's past conduct with the defendant.

The third exception does not apply to this case. That exception applies only where there is evidence that the complaining witness made prior untruthful allegations of sexual assault.

At issue therefore is whether the second exception in sec. 972.11 (2)(b) applies in this case. This exception allows "evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of the injury suffered."

The court of appeals reasoned that this exception does not apply because the evidence of virginity was not relevant to show the degree of sexual assault or the extent of the injury suffered, as required by sec. 972.11 (2)(b)2. To convict this defendant, the state need prove only that the defendant had sexual intercourse with the complainant and that the complainant is under the age of 12 years old. Contraction of a disease is not an element of the offense defined by sec. 940.225 (1)(d). Thus admission of the evidence of the complainant's virginity, according to the court of appeals, was not for the purpose of determining the degree of sexual assault or the extent of the injury suffered.

The state urges this court to interpret the rape shield law as permitting the admission of evidence of

610

virginity in this case. The state posits three arguments to support its interpretation of the rape shield law.

First, the state argues that the court must interpret the statute to effectuate the purpose and intent of the legislature. The state argues that interpreting the rape shield law as proscribing evidence of virginity in this case undermines the legislative intent and purpose. The state argues that the rape shield law was designed to protect the complainant by prohibiting two uses of prior sexual conduct: (1) to show that because of prior sexual conduct the complainant was or was not more likely to consent to sexual activity with the defendant when consent is an issue; and (2) to show the complainant is of unchaste character and therefore more likely to lie, or to show the victim is of chaste character and therefore more likely to be truthful.

The state asserts that evidence of the complainant's lack of prior sexual conduct in this case does not fall within either of the prohibited purposes. Rather, evidence of the complainant's prior sexual conduct was admitted to show the identity of her assailant. The complainant testified that she had never had sexual intercourse until the defendant assaulted her. The complainant contracted gonorrhea and there was evidence that the defendant also had gonorrhea. Thus, argues the state, the complainant's testimony that she was a virgin before the assault makes it likely that the complainant contracted gonorrhea from the assailant and that the defendant's having gonorrhea is consistent with his being the assailant. The state asserts that the use of the evidence of virginity in this manner does not violate the purpose of the rape shield law.

611

We conclude that sec. 972.11 (2)(b)2 cannot be read as the state advocates. The state's reading of the statute ignores the words of the statute. If the legislature had intended the meaning that the state contends, it would not have included the words "for the use of determining the degree of the assault or the extent of the injury suffered." These words were intended, for example, to address cases where pregnancy or contraction of a disease is an element of the offense. See secs. 940.225(1)(a), 940.225(2)(b).

The state's reading of sec. 972.11 (2)(b)2 is contrary to the legislature's intent. The legislature's adoption of sec. 972.11 (2) (c) demonstrates that the legislature did not intend the reading urged by the state. Subsection (c) provides:

> "Sec. 972.11(2)(c). Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par.(b) applies *regardless of the purpose of the admission or reference unless the admission is expressly permitted under par.(b) 1, 2, or 3.*" (Emphasis added.)

According to the Legislative Reference Bureau's analysis of sec. 972.11 (2)(c), the legislature intended sec. 972.11(2)(c) to prohibit a court from reading exceptions into the rape shield law. Sec. 972.11(2)(c) was proposed in response to this court's decision in *State v. Gavigan,* 111 Wis. 2d 150, 330 N.W.2d 571 (1983), which authorized admission of evidence of the victim's sexual conduct under certain circumstances, even though the evidence did not fall within the

statutory exceptions.[6] The Bureau's note which follows reflects the legislative intent to change the impact of *Gavigan*:

"In *State v. Gavigan,* 111 Wis. 2d 150 (1983), the Wisconsin supreme court authorized the admission of evidence of the victim's prior conduct if the evidence serves to prove a fact independent of the prior sexual conduct, if the probative value of the

[6]In *Gavigan,* the defendant was charged with second degree sexual assault pursuant to sec. 940.225 (2)(a), which makes it a felony to have "sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence." The defendant admitted that he had had sexual intercourse with the complainant but claimed that the complainant had consented. At trial, the complainant testified that she was a virgin prior to the assault by the defendant. A doctor also testified that in his opinion the complainant was a virgin. The court held that these direct references to the complainant's virginity were inadmissible because they did not fall within one of the three exceptions.

The complainant also testified about her conversation with the defendant in which she told the defendant she was a virgin. The court held that the evidence of the victim's conversation was admissible on the issue of consent, even though the conversation indirectly inferred to the complainant's virginity.

The *Gavigan* court explained that evidence of the complainant's prior sexual conduct might be admissible, in addition to evidence admissible under the statutory exceptions, if offered to prove a fact independent of the complainant's prior sexual conduct. The *Gavigan* court listed a number of conditions which should be met in order for evidence of the complainant's prior conduct to be admissible: (1) the evidence of the complainant's prior sexual conduct was offered to prove a fact which is relevant to an issue in the case; (2) the probative value of the evidence is outweighed by any prejudicial effect; and (3) upon request the jury should be instructed pursuant to sec. 901.06, Stats. 1985–86, that it should consider the evidence of the prior sexual conduct for the limited purpose for which it was offered.

evidence outweighs its prejudicial effect and if the jury's consideration of the evidence is for limited purposes.

"This bill provides that the 3 statutorily recognized exceptions are the only exceptions to the general rule prohibiting admissibility of prior sexual conduct of an alleged sexual assault victim. A court may not allow other exceptions regardless of the purpose for the consideration."

A memorandum of the Wisconsin Legislative Council Staff accompanying the bill adopting sec. 972.11 (2)(c) also reflects the legislative intent to change the effect of *Gavigan.* For a discussion of the legislative history of sec. 972.11 (2)(c), see *State v. Vonesh,* 135 Wis. 2d 477, 485–86, 400 N.W.2d 508 (1986).

Second, the state argues that the court must interpret a statute to avoid absurd results. The state argues that interpreting the rape shield law to exclude the evidence in this case leads to the absurd result that highly probative, minimally prejudicial evidence on identity will be excluded in this case and in other cases. The state concedes that none of the exceptions mentions admitting evidence of prior sexual conduct to prove the identity of the accused. The state urges this court, however, to read the second exception as if the words "for use in determining the degree of sexual assault or extent of the injury suffered" were not there. According to the state, reading the statute in that manner avoids absurd results.

The state's argument puts in question numerous statutes and rules of evidence that exclude evidence which may be probative and relevant to the prosecu-

tor's case. These statutes and rules exclude evidence because the rule-making body concludes that public policy mandates the exclusion: the need for the evidence is outweighed by the public policy justifications for excluding the evidence. The legislature has apparently weighed the considerations and has concluded that a general rule of nonadmissibility is desirable and that allowing exceptions to the general rule of nonadmissibility might result in the exceptions swallowing the rule. While these statutes of nonadmissibility may render relevant evidence inadmissible, this result is not absurd, as the state contends.

Third, the state argues that the court must interpret a statute to avoid rendering the statute unconstitutional. The state argues that if the court construes sec. 972.11 (2) to proscribe the evidence of virginity in this case, this court must hold sec. 972.11 (2)(c) an unconstitutional invasion of the province of the judiciary, violating the doctrine of separation of powers under the state constitution.

To understand the state's position, it is important to understand first what the state is not arguing. The state is not arguing that the legislature does not have the power to overrule an appellate court decision by amending a statute. The state concedes that the legislature has this power and that the legislature could overrule the *Gavigan* case by adopting sec. 972.11 (2)(c).

The state is not arguing that the legislature has no power to regulate in the areas of practice and procedure and evidence. The state concedes that the legislature has the power to regulate practice and procedure—so long as it does not materially impair or practically defeat the proper functioning of the judi-

615

cial system—and to provide reasonable rules for limiting the admission of evidence. *State v. Holmes,* 106 Wis. 2d 31, 46, 315 N.W.2d 703 (1982); *Smith v. Rural Mutual Ins. Co.,* 20 Wis. 2d 592, 600, 123 N.W.2d 496 (1963).[7]

The state concedes that the legislature may declare a class of relevant evidence inadmissible for policy reasons. Indeed the state concedes that the rape shield statute serves a reasonable and valid public policy.

The state also recognizes that while the three branches of the government are separate and equal, they do not operate in mutually exclusive, watertight compartments. The branches must cooperate in the public interest. Thus the state acknowledges that this court will respect and adopt the declarations of the legislature in the areas of pleading and practice and evidence as long as "they do not embarrass the court or impair its constitutional functions." *Integration of Bar Case,* 244 Wis. 8, 52, 11 N.W.2d 604 (1943).

Nevertheless, the state contends that the statute's overly broad exclusion of evidence depriving circuit courts of the discretion to admit relevant evidence is an unconstitutional invasion of judicial power. The state argues that by excluding evidence of prior sexual conduct that is highly probative and relevant for a

---

[7]This court, by its own rules, has recognized the power of the legislature to create or alter rules of evidence:

"Sec. 904.02 RELEVANT EVIDENCE GENERALLY ADMISSIBLE: IRRELEVANT EVIDENCE INADMISSIBLE. All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the State of Wisconsin, by statute or by these rules or by other rules adopted by the supreme court."

permissible purpose (identity here) and that is minimally prejudicial, the legislature has stripped the circuit court of its discretion to determine whether probative, relevant, non-prejudicial evidence is admissible in a particular case. The state argues that as a matter of separation of powers, relevance of evidence can be established only on a case-by-case basis, not by a general rule established by the legislature. The state views this statute as materially impairing or practically defeating the proper functioning of the judicial system and therefore constituting an unconstitutional invasion of judicial power. *State v. Holmes,* 106 Wis. 2d 31, 68–69, 351 N.W.2d 703 (1982).

The state relies principally on four cases to support its position.[8]

The state relies on *In Matter of E.B.,* 111 Wis. 2d 175, 330 N.W.2d 584 (1983), in which this court held that the legislature could require the circuit court to give the jury a copy of written instructions but could not mandate reversal if the circuit court did not abide by the statute. *E.B.* relied on two cases which the state also uses to support its argument—*Davis v. The President and Trustees of the Village of Menasha,* 21 Wis. 497 [\*491] (1867), declaring unconstitutional a law which required a new trial upon request of either party if the presiding judge had died or left the state before expiration of the time for settling a bill of exceptions, and *Thoe v. Chicago, Milwaukee and St. Paul Railway Co.,* 181 Wis. 456, 195 N.W. 407 (1923), holding unconstitutional a statute prohibiting a trial court from granting a directed verdict before submitting a case to the jury. The final case upon which the

---

[8]The state recognizes that a statute is presumed constitutional and that the challenger must prove beyond a reasonable doubt that the statute is unconstitutional.

state relies is *City of Janesville v. Carpenter,* 77 Wis. 288, 46 N.W. 128 (1890), holding unconstitutional a statute requiring the trial court to issue an injunction even though the plaintiff did not prove damages justifying an injunction.

The four cases upon which the state relies are distinguishable from this case. The four cases involve statutes which compel the circuit court to decide a case in a particular way. Because deciding the merits of the case is the essence of the court's function, this court declared the legislation in question in the four cases unconstitutional. In contrast, the rape shield statute does not make testimony conclusive; it does not mandate the result of the case.

The state is correct, however, in noting that the rape shield statute touches upon a judicial function—ruling on the admissibility of evidence at trial. More importantly, though, the statute represents a major public policy decision of the state legislature regarding sexual assault cases. The statute is one aspect of a broader legislative program to deal more effectively with the serious crime of sexual assault. Thus, while cast in evidentiary terms, the basic purpose of the rape shield statute is to protect sexual assault victims from embarrassing public exploration into their past sexual conduct unless the evidence elicited is relevant to select specified issues. The statute represents one means to overcome the reluctance of sexual assault victims to report the crime and to help prosecute the alleged offender. This law falls within the legislature's power to adopt laws for the public welfare.

It is impossible to construct a general rule classifying evidence as inadmissible that will not on occasion result in the exclusion of relevant evidence, just

as it is impossible to devise exceptions, however numerous, that will prevent relevant evidence from being excluded. By adopting the rape shield law, the legislature has balanced the advantages of a general classification of evidence for purposes of exclusion and the disadvantages that any such general rule creates. 1A *Wigmore on Evidence,* sec. 62, p. 1308, n. 29 (1983). We are unwilling to conclude in this case that the balance the legislature has made in adopting the rape shield law so lacks legitimacy and rationality that the rape shield law must be declared unconstitutional as materially impairing or practically defeating the proper functioning of the judicial system.[9] See *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978).

We conclude that the legislature intended to exclude evidence of a complainant's prior sexual conduct unless it falls within the three exceptions stated in the statute. Because the evidence of the complainant's prior sexual conduct in this case does not fall within these three exceptions, we conclude that the evidence was inadmissible.

To sustain the conviction, the state has the burden to establish that there is no reasonable possibility that the error contributed to the conviction.

---

[9]This case does not raise, and we do not reach, the question of whether the rape shield law may violate the constitutional rights of the defendant in certain cases. In *State v. Herndon,* 145 Wis. 2d 91, 426 N.W.2d 347 (Ct. App. 1988), the court of appeals has held the application of sec. 972.11 (2)(b) unconstitutional as a violation of the defendant's right to confront witnesses against him. The confrontation issue is not before this court in this case.

*State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). We conclude that the error was harmless.

The complainant's identification of the defendant as her assailant was the primary issue at trial. The defendant tried to show the complainant identified the defendant only after the mother had suggested it was he. The complainant's mother testified that the young girl was in a class for slow learners and for the emotionally disturbed. On cross-examination the mother testified that the complainant "does not mind very well" and that the mother had told school personnel that the daughter "lies frequently" and is "sneaky."

Arguably, the evidence of the complainant's virginity enhanced her credibility. While there were only two questions in this trial that related to the complainant's virginity, we recognize that the jurors may nevertheless have remembered this fact.

Upon reading this record, however, we can conclude that there is no reasonable possibility that the error contributed to the conviction. The complainant was eleven years old, and consent was not an issue. We are not persuaded that the jury would have given more credence to her testimony merely because she testified that she was a virgin. Thus we conclude that the inadmissible evidence did not influence the jury's verdict. The error was not prejudicial.

For the reasons set forth we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.