STATE OF Wisconsin, Plaintiff-Respondent,

v.

Herbert E. DROSTE, Defendant-Appellant.

Supreme Court

*No. 81–2288–CR. Argued October 5, 1983.—
Decided November 1, 1983.*

(Also reported in 339 N.W.2d 578.)

For the defendant-appellant there were briefs and oral argument by *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *J. Douglas Haag,* assistant attorney general, with *Bronson C. La Follette,* attorney general, on the briefs.

STEINMETZ, J.   The issue presented is whether the defendant had a constitutional right in this sexual assault case to confront and cross-examine the victim and witnesses regarding her prior sexual conduct in order to establish her alleged *modus operandi* or bias as an undercover police agent, and therefore discredit her credibility.   The defendant attempted to cross-examine the victim regarding sexual conduct with another man and offered a witness to testify that he had prior sexual acts with the victim.   The trial court refused to admit this evidence.

This action was commenced on August 25, 1980, when a criminal complaint was filed charging the defendant with first degree sexual assault contrary to sec. 940.225 (1) (b), Stats.[1]   The preliminary hearing was held on September 4, 1980, at the conclusion of which the defendant was bound over for trial.   An information charging him with one count of first degree sexual assault was filed on October 3, 1980.   On June 12, 1981, a hearing was held on the defendant's motion to admit evidence of sexual contact between the prosecutrix and a man other than the defendant, which motion was denied by the trial court.   On June 16 and 17, 1981, the defendant was tried by a jury in circuit court for Adams county, the Honorable Fred A. Fink, circuit judge for Wood county, presid-

---

[1] Sec. 940.225(1) (b), Stats., provides:

"940.225 **Sexual assault.**   (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

". . . .

"(b) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon."

ing. A verdict of guilty was returned, and on July 21, 1981, a judgment of conviction was entered and a sentence of fifteen years was imposed. The defendant filed a notice of appeal on November 25, 1981. The court of appeals certified the case, and on March 25, 1983, this court accepted the certification.

The criminal complaint alleged that on July 12, 1980, the prosecutrix was the victim of a forcible sexual assault, fellatio, perpetrated by the defendant with the use of a leather strap which was held around her neck.

The victim was hired by the Sauk county sheriff's office on April 1, 1980, to work as an undercover narcotics officer. She first met the defendant on July 10, 1980, after she was assigned to investigate him and others as possible drug suspects. At that first meeting with the defendant, which occurred in a bar, the victim testified she purchased from him six amphetamines commonly referred to on the street as "black cadillacs." The defendant also mentioned that he knew of a source of pharmaceutical quaaludes.

She next met the defendant on July 11, 1980, at which time he told her that if she came to his work place the next day, she would be able to purchase some quaaludes.

On July 12, 1980, she met the defendant who informed her they would have to travel to a woman's house out in the country to get the drugs. Knowing the possible danger, she went with him but told the defendant that her friends knew whom she was going to see and where she was going to be, and that she had to get back quickly or they might worry and start looking for her. They then proceeded to drive into the countryside where he sexually assaulted her.

The defendant drove on to a logging road, stopped at a fire ditch and they exited the car. The victim saw something flash in front of her face and was dragged to the ground by something around her neck. According

to the victim's testimony, the defendant jumped on top of her, holding a leather strap around her neck very tightly, and forced her to commit an act of fellatio on him. The defendant also attempted to have sexual intercourse with her but was unable to do so.

Upon returning to Wisconsin Dells, the defendant threatened her not to say anything to anyone since he could get much rougher. The victim then drove home, phoned her police supervisor and told him of the sexual assault. He testified that she was sobbing to the point that he did not recognize her voice. Her supervisor arranged for a medical examination.

Dr. Hansel, the examining physician, Detective Borski, her supervisor, and Deputy Manny Bolz of the Sauk county sheriff's department all testified to observing a red welt on the victim's neck. Detective Borski described it as running "from the right ear down around the Adams Apple; and it terminated at the left ear." Dr. Hansel testified these abrasions were quite evident at the time of his examination. The doctor described how when a strap is tightened around the neck of a person, the body's physical reaction is swelling and redness in the pressure area. He expressed his professional opinion that the mark on the victim's neck could have been caused by a leather strap. He also noted and described an elbow bruise and an abrasion on the skull that she had. Additionally, Detective Borski testified that the victim had pinch marks and a pronounced bruise on her elbow. He also testified she continued crying while he was present during the examination.

An employee of the state crime laboratory testified that throat swabs taken from the victim were positive for semen and that the vaginal swabs were negative.

The defendant presented to the court a list of proposed questions to be asked of the victim on cross-examina-

tion.[2] These questions in part concerned the victim's past sexual contact with one Eugene Cone, whom she was also investigating for drug usage. The trial court ruled that the proposed questions concerning her past sexual contact could not be asked.

At the motion in limine hearing the defendant called witnesses in an offer of proof. The proffered offer was

---

[2] Defendant's proposed cross-examination questions of the victim on the issue of her bias:

"1. Isn't it true that during the summer of 1980 you were involved in investigating numerous individuals as part of your duties as an undercover narcotics investigator?

"2. One of the individuals you investigated was a Steve Cohen?

"3. Isn't it also true that during the summer of 1980 you approached Mr. Cohen on many occasions and asked him to provide you with cocaine and other controlled substances?

"4. Didn't you also have a sexual relationship with Mr. Cohen during the summer of 1980?

"5. Didn't you in fact have sexual intercourse with Mr. Cohen on approximately half a dozen different occasions, during that same summer?

"6. And didn't that sexual relationship begin as part of your effort to gain his confidence and trust?

"7. Isn't it a fact that your sexual relationship with Steve Cohen helped you succeed in your plan to get him to trust you?

"8. Isn't it also true that you used the same approach to Herbert Droste?

"9. Didn't you also seek him out, and intentionally meet him for purposes of obtaining drugs?

"10. Didn't you affect a friendly attitude toward him, to gain his friendship and trust?

"11. Didn't you dress very provocatively on all the occasions that you met him?

"12. And didn't you indicate that you would be very appreciative if he provided you with controlled substances?

"13. Isn't it also true that you intended to do whatever was necessary, including having sex with Herbert Droste, if that would help you to gain his trust?

"14. And isn't it true that after the completion of the sexual act with Mr. Droste, you attempted to complete the bargain, and get the drugs you had been promised?"

that the victim had befriended targets of investigations, had used controlled substances with them, and had sexual relations with one of those persons in order to further her drug investigation. This testimony was offered to establish her bias and motivation to testify falsely against the defendant.

At trial, the defendant was allowed to ask the prosecutrix questions regarding her drug use during her investigations. She admitted in her testimony to pretending to be into the drug scene by pretending to smoke marijuana as a part of her investigation.

Eugene Cone was called by the defendant at the hearing. He was at the time charged with delivery of cocaine as a result of the prosecutrix's investigation. He denied ever giving her drugs, but testified he saw her using cocaine that she brought to a party. In addition, Cone testified that he had intercourse with the prosecutrix three to six times and that at the time of his testimony he was charged with six felony counts for drug sale offenses with the prosecutrix as the complainant.

The defendant intended by both the direct evidence of her alleged sex acts with Cone, as well as cross-examination of the prosecutrix herself, to demonstrate her bias and motive to testify falsely against the defendant and to discredit her credibility. The defense sought to demonstrate that as an undercover narcotics officer the prosecutrix used consensual sexual contact as a method of gaining a suspect's trust and thus obtaining drugs from him. The defense sought to discredit the prosecutrix's testimony against the defendant by arguing that her accusations of sexual assault were in retaliation for her inability to make the large purchase of drugs he had promised her.

The judge held the proffered testimony of Cone and the requested questions of the victim to be not relevant and prohibited by sec. 972.11(2)(b), Stats., since they

did not come within a stated statutory exception in that section. Sec. 972.11(2)(b) reads in pertinent part:

"(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

"1. Evidence of the complaining witness's past conduct with the defendant.

"2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

"3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness."

The defendant submits that this statute cannot and does not supersede the defendant's constitutional right to present a defense and to confront and cross-examine the witnesses against him. He claims he had a constitutional right to present the excluded evidence in order to show to the jury the method of operation employed by the prosecutrix and to establish her bias and motive to testify falsely. The defendant acknowledges that the state has a legitimate interest in precluding the admission of the prosecutrix's past sexual conduct, evidence which ordinarily is of low probative value and is likely to be misused. The defendant argues though, that this interest must yield to the defendant's right to present a defense and to confront the witness against him, citing *Davis v. Alaska*, 415 U.S. 308 (1974), and *Maryland v. DeLawder*, 28 Md. App. 212, 344 A.2d 446 (1975). The defendant states that these cases stand for the principle that the past acts of the witness tended to support a motive to falsify.

The *Davis* and *DeLawder* cases were previously discussed by this court in *Angus v. State,* 76 Wis. 2d 191, 251 N.W.2d 28 (1977), as follows:

"In both of these cases, the defense theory was based upon logical reasoning for a motive to be untruthful and the evidence of the prior acts was directly related to the motive. For example, in *DeLawder* it would have been impossible to prove the prosecutrix's motive for untruthfulness without showing she had previously had sexual intercourse and became pregnant. In the present case, however, the complainant's prior sexual conduct is not related to the alleged motive for untruthfulness, animosity toward the defendant, and therefore, the *Davis* and *DeLawder* cases are clearly distinguishable.

"Even if the court could find some probative value in the evidence of these prior acts, it is certainly clear that whatever probative value that evidence might have is outweighed by the great risk of prejudice this sort of inflammatory evidence might inject into the case. Under such circumstances the evidence may be properly excluded within the discretion of the trial judge. Sec. 204.03, Stats.; *Jones (George Michael) v. State,* 70 Wis. 2d 41, 54, 233 N.W.2d 430, 437 (1975).

"We conclude that the trial court properly excluded the evidence of prior sexual acts . . . . The evidence was not relevant to the issues of the case or credibility. The defendant was not denied the right to present his theory for his daughter's alleged untruthfulness, that theory being animosity toward him. He was only prevented from introducing irrelevant and prejudicial evidence." *Id.* at 201.

*Davis v. Alaska,* 415 U.S. 308, dealt with the conflict between the constitutional confrontation right to cross-examine and the state's statute prohibiting the use of a juvenile's record to impeach his testimony.[3] In that case

---

[3] Alaska Rule of Children's Procedure 23 provides:

"No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate."

the court held: "[T]he State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." 415 U.S. at 320. *Davis* did not deal with the otherwise irrelevant evidence with low or no probative value such as in the instant case of the prosecutrix's prior sexual conduct.

Sec. 972.11, Stats., reflects the general rule that a sexual assault victim's prior sexual conduct is a classic case of evidence having low probative value while being highly inflammatory. *See, e.g.,* Annot., *Modern Status of Admissibility, In Forcible Rape Prosecution, of Complainant's Prior Sexual Acts,* 94 A.L.R.3d 257 (1979); *Cf. Milenkovic v. State,* 86 Wis. 2d 272, 272 N.W.2d 320 (Ct. App. 1978).

The defendant proffers that an undercover narcotics officer per se presents a question of bias for the jury and therefore sec. 972.11(2)(b), Stats., should not be applied. This is not, however, a universally accepted proposition; the test of relevancy is not applicable nor is it a convincing reason why evidence of a low probative value and which is highly prejudicial or inflammatory should be heard by the jury even though it is otherwise not proper under sec. 972.11 and the rules of evidence.

There is no pattern or method of operation here of the victim trading sexual favors for drugs or proclaiming sexual attack if drugs are not forthcoming. Cone said he did not deliver drugs to the victim and yet she had consensual sexual contact with him. His claim of sexual favors follows her becoming the prosecutrix against him for the illegal delivery of cocaine. The defendant, Droste,

Sec. 47.10.080(g), Alaska Stats. (1971) provides in part:
"The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceedings in any other court . . . ."

claims that is similar or identical to his relationship with her and that she converted consensual sex into a claim of assault when he did not not deliver drugs to her. Not only are the facts and results opposite, but there is no resemblance to any court holding establishing that a constitutional violation occurs unless irrelevant, inflammatory evidence with very little probative value is admitted for the jury's consideration.

There are facts in this record testified to by persons other than the victim that are contrary to the defendant's theory of defense that the act of fellatio was consensual and that the victim used sexual favors as a method of operation. They are:

(1) Bruises to her neck observed by two officers and Dr. Hansel. The doctor opined her neck bruises were consistent with the leather strap she described as used by the defendant.

(2) Bruises to her elbow and an abrasion on her skull.

(3) Emotional crying in the presence of Dr. Hansel during the physical examination and Detective Borski when she reported the attack and was taken to the doctor.

(4) Eugene Cone admitted that the victim had told him and at least two other people in the criminal milieu she was investigating that she could not have sexual relations for medical reasons.

It does not ring true that the victim would voluntarily submit to painful treatment and injuries as a part of giving sexual favors to curry favor among drug dealers. Her practice was actually to discourage, not encourage sexual encounters with her suspects. Also, it would not be reasonable if her *modus operandi* were, as suggested by defendant, to interrupt her undercover posture by becoming a prosecutrix in a sexual assault case against one of the persons she was investigating, the defendant. Finally, the one offered witness, Eugene Cone, denied

delivering cocaine or any other controlled substances to her for the alleged sexual favors he claimed and yet she did not bring any sexual assault charges against him.

The defendant's theories of offering evidence contrary to sec. 972.11(2)(b), Stats., of bias and *modus operandi* affecting credibility were not borne out by his own offer of proof. The evidence of prior sexual conduct of the victim was purely not relevant to whether this defendant committed a nonconsensual act of fellatio with the victim. Even in the absence of sec. 972.11(2)(b), this evidence would not have been admissible; it had such little probative value, if any, that its inflammatory character far outweighed its near barren value.

Defendants in criminal cases have no constitutional right to present nonrelevant evidence. Relevant evidence is defined in sec. 904.01, Stats., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The evidence offered to describe the alleged prior sexual conduct of this victim did not have any tendency to make the existence of consensual fellatio more or less probable.

*By the Court.*—The judgment of the circuit court is affirmed.