IN the INTEREST OF MICHAEL R. B., a person under 18 years of age:

MICHAEL R. B., Appellant-Petitioner,

v.

STATE of Wisconsin, Respondent.†

Supreme Court

*No. 91–1393. Oral argument November 3, 1992.—Decided May 10, 1993.*

(Also reported in 499 N.W.2d 641.)

†Motion for reconsideration denied June 22, 1993.

713

For the appellant-petitioner there were briefs and oral argument by *Kenneth L. Lund,* assistant state public defender.

For the respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals which affirmed a dispositional order of the circuit court for Door County, John D. Koehn, Judge, finding fourteen-year-old Michael B. delinquent for the first-degree sexual assault of eight-year-old Laura R.[1] Michael was

---

[1] *See* Sec. 948.02:

**Sexual assault of a child. (1)** FIRST DEGREE SEXUAL ASSAULT. Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony.

Wis. Stats., § 948.02(1) (1989–90).

The petition filed against Michael B. contained a second count of sexual assault in violation of sec. 948.02 alleging that Michael B. also had sexual intercourse with thirteen-year-old Jamie H., a friend of Laura's, sometime between April 1, 1990, and May 24, 1990. Although the second count was later dismissed, the incident alleged in the count formed the basis for some of the evidentiary rulings at issue in the instant case.

718

subsequently ordered placed under the supervision of the Door County Department of Social Services for a period of one year, with placement to remain in his home with his mother. Michael was also ordered to participate in counselling, community service, and other conditions of supervision.

Michael appealed the order of the circuit court citing several rulings by the judge in which evidence offered by Michael was deemed irrelevant and therefore inadmissible. Michael argued that by excluding the proffered evidence the court denied him the constitutional right to present a defense and to confront witnesses testifying against him. The court of appeals affirmed the judge's evidentiary rulings on the ground that the excluded evidence was either irrelevant or precluded by sec. 972.11, Stats., Wisconsin's rape shield law.[2]

---

[2] Wisconsin's rape shield law, sec. 972.11, provides:

(2) (a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and lifestyle.

(b) If the defendant is accused of a crime under s. 940.225, 948.02, 948.05 or 948.06, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c) Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the com-

The question before this court is whether the judge erroneously exercised his discretion in excluding the evidence offered by Michael B.—either as a matter of law with respect to sec. 972.11 or with respect to the discretionary powers of the court to rule on evidentiary matters. Evidentiary rulings generally are reviewed with deference to determine whether the circuit court properly exercised discretion in accord with the facts of record and with accepted legal standards. *State v. Blair,* 164 Wis. 2d 64, 473 N.W.2d 566 (Ct. App. 1991); *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). Whether the judge's determinations denied Michael the right to present a defense is a question of constitutional proportion, however, and as such involves "constitutional facts" which this court may review *de novo. State v. Pulizzano,* 155 Wis. 2d 633, 648, 456 N.W.2d 325 (1990). Under the facts of this case we concur in the court of appeals' application of sec. 972.11, Stats., but nevertheless conclude that the judge erroneously exercised his discretion in excluding several of the pieces of evidence offered by Michael B. Accordingly, we reverse the decision of the court of appeals and remand this case to the circuit court for further proceedings in accordance with this opinion.

On June 10, 1990, Laura R. told her mother that Michael B. had sexually assaulted her sometime during the week of April 22, 1990. According to the mother's written account of this June 10th conversation, Michael came up to Laura as she was playing in the woods behind the apartment building in which both children lived and

plaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2 or 3.

Wis. Stats., § 972.11(2) (1989–90).

told her to take off her clothes or he and some high-schoolers would beat up her eleven-year-old brother David. Laura told her mother that Michael then removed his pants and underwear and, despite her attempts to push him off, held Laura down and stuck his "thing" in her.

On June 11, 1990, the day after Laura's disclosure to her mother, Laura was interviewed by police officer Dale Jeanquart and Mary Lange, a child protective services intake worker. During the interview, Laura described the assault and confirmed that Michael had put his "weiner" in her "pee-pee." Laura also stated, contrary to what she had told her mother the day before, that she and Michael were standing during the incident. That same day, Laura's mother took her to be examined by Dr. Kevin O'Brien, a family practitioner.

At trial the jury received the mother's written and oral testimony. The state also introduced the following evidence to support its charge. First, Laura testified with respect to the assault and to her subsequent attempts to avoid Michael by taking alternate routes home from her bus stop after school. Using anatomical dolls, Laura identified the penis on a boy doll as a "wee-wee" and the area between the girl doll's legs as a "pee-pee." Second, Mary Lange corroborated both Laura and the mother's testimony and further testified that Laura's initial reticence in disclosing the assault was typical for child victims of sexual assault. Third, Dr. O'Brien testified as to Laura's physical condition, namely that her hymen was more widely open than would be expected for a girl her age. According to Dr. O'Brien, this unusually wide hymenal opening was consistent with that of a child who had experienced some type of vaginal penetration.

Responding to the state's charges, Michael B. raised two theories of defense: Laura's open hymen and her

sexual knowledge could be explained by activities other than sexual intercourse with Michael, or in the alternative, Laura fabricated the claim against Michael. To support these theories, counsel for Michael B. successfully introduced the following evidence to rebut the state's contentions and to provide alternate explanations of Laura's physical condition and her knowledge of sexual practices. First, Officer Jeanquart, the police officer who interviewed Laura on June 11th, testified with respect to inconsistencies in Laura's account of the assault. Second, to rebut Laura's statement that she had altered her route home from the bus stop after school to avoid Michael, the director of school transportation testified that Laura's school bus dropped her off in front of her apartment complex five to ten minutes before Michael's school was dismissed. Third, defense counsel further impeached Laura's trial testimony by introducing evidence of a police officer and child services intake worker's interview with Laura on May 29th during which Laura denied having had any sexual contact or intercourse with anyone prior to that date. Fourth, Michael, his mother and her boyfriend all testified that on April 25th, 1990, Michael was under restriction requiring him to come home immediately after school and remain with his mother or another responsible adult at all times. All three individuals also testified that on the date of the alleged assault they were visiting George and Joan Romdenne, two friends who live out of town.

In addition to the above evidence, Michael tried to introduce five pieces of evidence all of which the judge deemed inadmissible. This evidence included: (1) testimony by a neighbor with respect to possible prior sexual conduct between Laura and her brother; (2) testimony by a friend of Laura's with respect to conversations between the two girls relating to prior sexual exper-

iences; (3) expert testimony by Dr. Roenning with respect to Laura's enlarged hymenal opening; (4) a calendar kept by Michael's mother detailing Michael's whereabouts during April of 1990; and (5) evidence going to support defense counsel's assertions of bias on the part of Laura because of alleged ongoing animosities between her family and Michael's. The substance and facts underlying each of these pieces of evidence will be discussed *seriatim* later in this opinion.

Admissibility of evidence is determined by the trial judge subject to the limits of relevancy and adequacy of proof. *See* sec. 901.04, Stats.[3] *See also State v. DeSantis,* 155 Wis. 2d 774, 786 n.5, 456 N.W.2d 600 (1990) (citing commentaries relating to the federal analogue). Judges exercise broad discretion with respect to the admissibility of evidence as long as the evidence tends to prove a material fact. *State v. Denny,* 120 Wis. 2d 614, 623, 357 N.W.2d 12 (Ct. App. 1984) (*citing State v. Pharr,* 115 Wis. 2d 334, 344, 340 N.W.2d 498, 502 (1983)). *See also*

---

[3] Section 901.04, Stats., provides in part:

**(1)** QUESTIONS OF ADMISSIBILITY GENERALLY. Preliminary questions concerning . . . the admissibility of evidence shall be determined by the judge, subject to sub. (2) and ss. 971.31(11) [pretrial motion for rape shield law] and 972.11(2) [rape shield law]. In making the determination the judge is bound by the rules of evidence only with respect to privileges.

**(2)** RELEVANCY CONDITIONED ON FACT. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

. . .

**(5)** WEIGHT AND CREDIBILITY. This section does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

Wis. Stats., § 901.04 (1989–90).

secs. 904.01 and 904.02, Stats.[4] Material facts are those that are of consequence to the merits of the litigation. Relevancy, in turn, is a function of whether the evidence tends "to make the existence of [a material fact] more probable or less probable than it would be without the evidence." *Denny,* 120 Wis. 2d at 623. *See generally* 1974 Judicial Council Committee's Note to sec. 904.01, Stats., 59 Wis. 2d R8. The proffered evidence need not prove a fact in a "substantial way," but it must do more than "simply afford[ ] a possible ground of suspicion against another person . . .." *Denny,* 120 Wis. 2d at 623.[5]

---

[4] Section 904.01, Stats., provides:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Wis. Stats., § 904.01 (1989–90).

Section 904.02, Stats., provides:

All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

Wis. Stats., § 904.02 (1989–90).

[5] To assist the circuit judge in determining whether evidence is relevant, a litigant may provide the court with an offer of proof indicating the nature and purpose of the evidence being admitted. This court, in *Milenkovic v. State,* concluded that although it might be a more time consuming method of making an offer of proof, a question and answer format is preferable to statements because "it enable[s] the trial court and reviewing court to approach the evidentiary problem with some confidence that the evidentiary problem really exists." *Milenkovic,* 86 Wis. 2d 272, 285 n.10, 272 N.W.2d 320 (1978).

This court's preference for offers of proof made in question and answer format is well illustrated by the instant case. Michael maintains that much of the court of appeals' criticism of his

The evidence must connect that person to the crime, either directly or inferentially—"factual resemblance" alone is not enough. *Hicks v. State,* 47 Wis. 2d 38, 176 N.W.2d 386 (1970); *Holmes v. State,* 76 Wis. 2d 259, 251 N.W.2d 56 (1977). *See generally* Saltzburg and Martin, *Federal Rules of Evidence Manual,* Rule 401 at 123 (5th ed. 1990); McCormick on Evidence, *Relevancy and its Counterweights: Time, Prejudice, Confusion and Surprise* at 433 (2d ed. 1972). Furthermore, evidence that is admissible for some purposes or parties may not be admissible for others. In such an event, the court may admit the evidence but shall instruct the jury as to the proper scope of admission. *See* Sec. 901.06, Stats.[6]

Having set forth the legal guidelines with which we review a judge's evidentiary rulings, we turn to the excluded evidence forming the basis for this appeal and address each of Michael's five evidentiary challenges in order. We discuss Michael's Sixth Amendment claim separately in part II of the opinion.

---

offers of proof stem from the fact that he was denied the opportunity to make the offers in answer and question form. We agree with Michael that justice might better have been served by permitting a more in depth offer of proof and we therefore take this opportunity to address the merits of Michael's claims rather than dispose of the appeal on more technical grounds. The sufficiency of Michael's offers of proof in respect to his sixth amendment claim, however, is a question of law and as such is discussed *infra.*

[6] Section 901.06, Stats., provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Wis. Stats., § 901.06 (1989–90).

## I. EVIDENTIARY EXCLUSIONS: RELEVANCY AND SEC. 972.11

### A. TESTIMONY OF THEODORE RUCKMAN

■

Michael B. sought to admit the testimony of Theodore Ruckman, a neighbor of Laura and Michael's at the time of the assault. Ruckman was to testify that he had seen Laura and her brother David playing together in a tire swing in the early summer of 1990; the children were facing each other in the swing, David's pants were undone, and the children spent two or three minutes "touching each other's private parts." The judge ruled the testimony irrelevant and therefore inadmissible. The court of appeals affirmed on the ground that the evidence was excluded under the Wisconsin rape shield law. We agree with both conclusions and therefore affirm this evidentiary ruling.

Insofar as Ruckman's testimony was to suggest that "someone else," i.e., David, sexually assaulted Laura, the evidence is irrelevant to the charges filed against Michael B. To win Michael's conviction, the state need only prove that he had sexual contact or intercourse with Laura R. Evidence going to prove one sexual encounter does not assist the trier of fact in determining whether a separate sexual encounter also occurred—the two events are not mutually exclusive. Accordingly, evidence that David might have sexually assaulted Laura on a previous occasion does not make the existence of a material fact, namely Michael's physical contact with Laura during the week of April 22, "more probable or less probable than it would be without the evidence." *Denny,* 120 Wis. 2d at 623.

More troublesome is Michael's contention that Ruckman's testimony would provide an alternate expla-

nation for the source of Laura's sexual knowledge and her enlarged hymenal opening. Michael further asserts that the testimony would permit him to test Laura's credibility regarding statements made to Doctor O'Brien that something like the alleged April attack "has never happen [sic] before or since" and thus determine whether she fabricated the entire story to protect David. As counsel for Michael argued in his motion before the judge, the testimony "goes to her credibility . . . to her bias . . . to her prejudice."

We do not doubt the soundness of Michael's claim that information tending to prove an alternate source of Laura's physical condition and sexual knowledge would be relevant to his defense. Nonetheless, we agree with the reasoning of the court of appeals and conclude that sec. 972.11, Wisconsin's rape shield law, prohibits the admission of evidence relating to Laura's sexual history. The law was enacted in large measure to protect victims of sexual assault from themselves becoming the focus of scrutiny during trial and thereby misleading or confusing the jury with collateral issues. *See State v. Pulizzano,* 155 Wis. 2d 633, 647, 456 N.W.2d 325 (1990). In the instant case, evidence of Laura's conduct with her brother would deflect attention away from the question of whether Michael had sexually assaulted Laura and focus the jury's attention on Laura's character and past behavior.

In addition, Wisconsin's rape shield law silenced widely held but outmoded beliefs that a woman's sexual past would shed light on the veracity of her complaint and the likelihood she had consented to the conduct. *See State v. Herndon,* 145 Wis. 2d 91, 104–05, 426 N.W.2d 347 (Ct. App. 1988); *State v. Gavigan,* 111 Wis. 2d 150, 156, 330 N.W.2d 571 (1983). Section 972.11, Stats., fills a slightly different role, however, in respect to child sex-

ual assault cases in which the victim's physical condition, such as an enlarged hymenal opening, is pivotal to the state's case. One generally presumes that an eight-year-old child does not have a sexual history. Therefore, if confronted with physical evidence to the contrary one may unjustly infer that the child must have been sexually assaulted on the occasion at issue in the litigation.

The child victim of sexual assault may best be likened to that of an adult victim whom the prosecution asserts was a virgin prior to the alleged assault. In *State v. Clark,* this court ruled that evidence relating to a victim's alleged virginity prior to the assault in question was inadmissible under Wisconsin's rape shield law. *State v. Clark,* 87 Wis. 2d 804, 817, 275 N.W.2d 715 (1979).[7] Section 972.11(2)(b), Stats., prohibits the admission of any evidence related to the victim's prior sexual conduct—including the absence of sexual activity. *Clark,* 87 Wis. 2d at 817. *See also State v. Mitchell,* 144 Wis. 2d 596, 609, 424 N.W.2d 698 (1988) (*citing Gavigan,* 111 Wis. 2d at 150; *State v. Penigar,* 139 Wis. 2d 569, 408 N.W.2d 28 (1987)).

Michael nevertheless maintains that a dilated hymen should be considered a "disease" within the meaning of sec. 972.11(2)(b)2, which allows "evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered."[8] We reject this broadening of sec.

---

[7] In *Clark,* the court ultimately ruled that the admission of evidence relating to the victim's alleged virginity was harmless error and did not justify the circuit court's granting a new trial. *Clark,* 87 Wis. 2d at 817–18.

[8] Michael does not claim that a dilated hymen fits within a dictionary definition of "disease" but merely that so interpreting the term would render it more meaningful. In construing a stat-

972.11(2)(b)2 for several reasons, for the statute is written narrowly to allow evidence of specific instances of sexual conduct only insofar as they may show a source of semen, pregnancy or disease and only for the limited purpose of determining the extent of injury or degree of assault at issue in the case. We agree with the assessment of the court of appeals that according to the plain meaning of the statute "the source of semen, pregnancy or disease is not an issue, and M.R.B. is not challenging the degree of sexual assault or the extent of L.R.'s injury . . .."

It strains linguistic credibility to define "disease" as including the condition of a child's hymen.[9] Black's Law Dictionary defines "disease" as the "[d]eviation from the healthy or normal condition of any of the functions or tissues of the body. . . ." *See* Black's Law Dictionary

---

ute, however, we must look first to its plain meaning—not to one that we might think better. *See In Interest of J.A.L.*, 162 Wis. 2d 940, 962, 471 N.W.2d 493 (1991).

[9] Michael urges us to adopt an interpretation of sec. 972.11(2)(b) similar to that of the Michigan Supreme Court. We decline to follow the Michigan court's lead for two reasons. First, in *People v. Mikula* the court based its holding in large measure on the fact that nothing in the statute indicated a legislative intent to limit the rule of exclusion to only those conditions expressly included in the statute. *People v. Mikula*, 269 N.W.2d 195, 198 (1978). To the contrary, the Wisconsin legislature enacted sec. 972.11(2)(c) to counter exactly this reasoning. Second, whereas the Michigan statute cautions only that evidence admitted under the rape shield exception must be material to a fact at issue and not unduly prejudicial, Wisconsin's rape shield exception expressly limits the use of the admitted evidence to determining the degree of sexual assault or the extent of injury suffered. *Id.* We note the different statutory language even though, having already concluded that a dilated hymen does not constitute a "disease," we need not address the second aspect of sec. 972.11(2)(b)2.

(1987). Central to the definition is a concept of damage which does not apply to a dilated hymen regardless of the individual's age.

Since the legislature's adoption of sec. 972.11(2)(c), this court has restricted its interpretation of sec. 972.11(2)(b). Section 972.11(2)(c) provides:

> Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies *regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b) 1, 2, or 3.* (Emphasis added.)

In *State v. Mitchell,* we rejected evidence of the claimant's virginity for the purpose of identifying the defendant as the person from whom the claimant had contracted gonorrhea on the ground that 972.11(2)(c) absolutely prohibits this court from expanding the scope of the statute's listed exceptions. *State v. Mitchell,* 144 Wis. 2d at 612. *See also Pulizzano,* 155 Wis. 2d at 642–44. So too, we now reject Michael B.'s assertion that Ruckman's testimony should be admitted to show an alternate source of Laura's physical condition.

## B. TESTIMONY OF LAURA'S FRIEND JAMIE

In his offer of proof in respect to Jamie's testimony, Michael B. indicated that the young girl would testify regarding the nature of her relationship with Laura and the substance of the confidences made to each other. According to the offer of proof the two girls "were very close companions and played with one another . . . [t]hey confided in one another . . . [t]hey talked to one another, and they shared a lot of information between them about statements they made to others, statements they made to police officers." Consistent with our discussion of the

admissibility of Ruckman's testimony, we conclude that insofar as Jamie's testimony implicates Laura's prior sexual conduct, e.g., that she had been assaulted by David, the judge was correct to exclude it from trial. *See* Sec. 972.11(2)(b), Stats.

■

Information may prove relevant in numerous ways; evidence that is admissible for one purpose may prove inadmissible for another. *See* Sec. 901.06, Stats. In this instance, Jamie's testimony would have included additional information independent of Laura's sexual conduct. Specifically, Michael maintains that Jamie's own sexual past provided Laura with an alternate source of sexual knowledge that might have led Laura either to fabricate the story of Michael's assault or to imitate Jamie's behavior of inserting objects into her own vagina. It is highly relevant to the material fact of Laura's sexual knowledge that Jamie might have confided in Laura with regard to her own past sexual activities.[10] We therefore conclude that Jamie should have been allowed to testify as to the nature and substance of her friendship with Laura. It is the duty of the judge on remand to ensure that Jamie's testimony does not stray from this narrow path of admissibility. We urge the judge to screen the proposed testimony carefully—*in limine* if necessary—to guarantee that Jamie testify only

---

[10] The state asserts that Michael cannot claim that the discussions provided the basis for both "false allegations of sexual abuse in this case" and as an alternate source of Laura's sexual knowledge. We do not agree with the state's portrayal of these claims as being somehow unrelated to each other. Insofar as Jamie's testimony is relevant to proving an alternate source of Laura's sexual knowledge it is similarly relevant to proving the knowledge with which Laura would have been capable of fabricating the allegations in this case.

as to her own personal experiences and confidences, and that she not drift onto prohibited subjects relating to Laura's past behavior.

## C. TESTIMONY OF MEDICAL EXPERT

Michael argues that the judge erroneously exercised his discretion in denying him the opportunity to present expert medical testimony to rebut the inference from the state's medical witness, Dr. O'Brien, that the condition of Laura's hymen was likely the result of some type of vaginal penetration. We agree and therefore reverse this evidentiary ruling.

At trial, Dr. O'Brien testified that his examination of Laura indicated a "more widely opened" hymen "than we would possibly expect for a girl of this age." Moreover, he stated that he was unable to do a speculum exam because "at that time it was too painful for her . . .." Agreeing with the Assistant District Attorney's characterization of Laura's physical condition as being "consistent with that of a child who had had some type of vaginal penetration prior to the date of [the] exam," Doctor O'Brien ultimately concluded that "the hymen had been more widely opened than it should have been for a child of her age."

On cross-examination, the Doctor testified that while normal activity might account for "a slight opening in the hymen," it would not account "for the amount that this was open." Moreover, Dr. O'Brien conceded that although he was not a gynecologic expert witness on this type of issue—but had "a lot of experience in this regard—that normal physical activity would not account for the hymen to be opened as hers was."

We agree with the court of appeals that sec. 972.11, Stats., precludes Michael from introducing evidence going to show past sexual activity as an alternate expla-

732

nation for Laura's dilated hymen. Nevertheless, by excluding Dr. Roenning's testimony the judge denied Michael an opportunity to rebut Dr. O'Brien's statements regarding the likelihood that an eight-year-old child would have a dilated hymen caused by normal physical activity.

The state maintains that Michael was able to elicit similar testimony from Dr. O'Brien on cross-examination and that further testimony would be merely cumulative. We disagree. Having read Dr. O'Brien's testimony, we find no support for the proposition that Laura's physical condition was the result of normal physical activity. In fact, Dr. O'Brien dismissed that very hypothesis and concluded that normal activity "would not account for such an opening as hers." Having offered one doctor's conclusion regarding the cause of Laura's condition, the state opened the door for Michael to introduce counter testimony.

■

We agree that it would have been inappropriate to allow Dr. Roenning to testify as to Laura's individual condition. He had neither examined Laura nor studied Dr. O'Brien's report. Nevertheless, given the unique nature of child sexual assault and the role that physical evidence plays in such cases, general information relating to causes of wide hymenal openings would be highly relevant. Accordingly, we conclude that the judge erroneously exercised his discretion in denying Dr. Roenning the opportunity to testify with respect to existing medical evidence regarding the normal dilation of an eight-year-old's hymen.[11]

---

[11] We reject the court of appeals' conclusion that Michael B. failed to lay an adequate foundation for Dr. Roenning to testify as an expert. Having permitted Dr. O'Brien's testimony on the question of the effect of normal physical activity on a child's hymenal

## D. MOTHER'S CALENDAR

Michael asserts that the judge erroneously exercised his discretion in refusing to admit into evidence his mother's calendar, introduced as corroborating evidence of Michael's whereabouts during the week in which he allegedly assaulted Laura. In so ruling, however, the judge reasoned that the information contained in the calendar had already been introduced verbally during direct and cross-examination of Michael's mother.

We are further persuaded of the appropriateness of the judge's ruling in that Michael tried to have the calendar admitted only after all the evidence was closed and the court was preparing jury instructions. We agree with the assessment of the court of appeals that the refusal to admit the calendar into evidence was legally justified and within the judge's discretion.

## E. EVIDENCE OF BIAS

Michael asserts that the judge erroneously exercised his discretion in precluding witnesses from testifying as to personal animosities and biases existing between Laura and Michael's families. In particular, Michael contends that he should have been permitted to ask Laura's mother if there were hard feelings between her son [David] and Michael. Michael also claims that the judge erroneously exercised his discretion in sustaining the state's objection to his questioning Laura's mother as to her own relationship with Michael's family. Michael challenges the court's rulings on these, and

opening despite his admission that he was not a "gynocological expert" on this type of issue, we conclude that the court erred in requiring Dr. Roenning to satisfy a higher standard of expertise.

other similarly vague questions, on the ground that their exclusion constituted an erroneous exercise of the circuit court's discretion. We disagree and therefore affirm this evidentiary ruling.

■

We agree with Michael's assertion that evidence pertaining to a party's bias generally is relevant to the question before the court. Nevertheless, we reject the claim that Michael's vague and unsubstantiated assertions of animosity meet the necessary standards for admissibility. As stated *supra,* evidence is relevant if it tends to make the existence of a material fact more or less probable. In this case, Michael sought information with respect to relationships beyond the scope of the witnesses' personal knowledge; he also sought information unrelated to the parties involved in the dispute. Insofar as circuit court judges exercise "considerable discretion in deciding the extent of an inquiry with respect to bias" we conclude that the judge did not erroneously exercise his discretion in precluding this line of questioning. *See State v. Sarinske,* 91 Wis. 2d 14, 43, 280 N.W.2d 725 (1979).

## II. SIXTH AMENDMENT CLAIM

Michael B. argues that *State v. Pulizzano* permits the admission of evidence showing prior sexual experience on the part of the victim if needed to ensure a defendant's Sixth Amendment right to confront witnesses. *See* U.S. Const., amend. VI.[12] While we do not disagree with Michael's Sixth Amendment legal analysis, we conclude that under the facts of this case the judge's

---

[12] The sixth amendment provides in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor . . . ."

evidentiary rulings did not deny Michael the right to a defense.

In *Pulizzano*, this court reasoned that the strict application of Wisconsin's rape shield law must at times yield to a defendant's constitutional right to cross-examine witnesses and to present a defense. *Pulizzano*, 155 Wis. 2d at 647–48. Before being allowed to introduce relevant but otherwise excluded evidence, the defendant must make an offer of proof establishing that (1) the prior act clearly occurred; (2) the act closely resembles those at issue in the instant case; (3) the act is relevant to a material issue; (4) the evidence is necessary to his case; and (5) the probative value of the evidence outweighs its prejudicial effect. *State v. Pulizzano*, 155 Wis. 2d at 656. Keeping in mind the fact that an "offer of proof need not be stated in complete precision or with unnecessary detail," we nevertheless conclude that Michael's offers of proof failed to meet the standard set forth in *Pulizzano. See Milenkovic*, 86 Wis. 2d at 284.

Ruckman was to testify that Laura and her brother were seen "touching one another's private parts" while sitting, facing each other in a tire swing. We first note that Michael's offer of proof is insufficient to support an inference that the alleged incident which occurred early in the summer of 1990 in fact took place prior to Laura's June 11th physical examination. Even assuming the proper sequence of events, however, we find it an insupportable leap of reasoning to conclude that two or three minutes of undefined sexual touching while sitting in a tire swing so closely resembles sexual intercourse as to satisfy the *Pulizzano* test. In his offer of proof Michael failed to link the conduct in which Laura and David were allegedly engaged to an act of vaginal penetration suffi-

cient to cause the degree of hymenal opening noted in Dr. O'Brien's testimony.[13] Finally, Ruckman's testimony is not necessary to the defense strategy in that other less prejudicial testimony discussed *infra* could also have provided evidence of an alternate source of Laura's sexual knowledge. We therefore affirm the judge's decision to exclude Ruckman's testimony.

As for certain questions asked of witnesses about the police investigation into allegations of sexual misconduct by David, we again find no Sixth Amendment violation. First, we have already noted that David's sexual conduct is without relevance to the charges filed against Michael. Moreover, we agree with the state's assertion that the offer of proof in support of the excluded information in respect to David failed adequately to form a basis from which the court could even surmise that Laura was aware that the police investigation involved her brother. *See Milenkovic,* 86 Wis. 2d at 282–84. Second, introducing evidence of David's past sexual conduct to prove that Laura fabricated the April 22 sexual assault to protect her brother would so prejudice the jury that its limited probative value is strongly outweighed by prejudicial effect. *See* Sec. 904.03, Stats. *See also State v. Droste,* 115 Wis. 2d 48, 58, 339 N.W.2d 578 (1983) (ruling evidence of prior sexual conduct of the victim with a third person inadmissi-

---

[13] In so holding, we agree with the reasoning of the foreign jurisdictions cited in the state's brief. *See, e.g., United States v. Payne,* 944 F.2d 1458, 1468–70 (9th Cir. 1991) (evidence of "heavy petting" insufficient to create inference of digital penetration); *Pack v. State,* 571 P.2d 241 (Wyo. 1977) (failure to prove that sperm could remain motile and viable for the period of time in question rendered evidence showing earlier consensual sexual intercourse irrelevant and prejudicial).

ble because of its prejudicial effect). We thus conclude that this evidence also fails the test set forth in *Pulizzano.*

Because we conclude that the judge erroneously exercised his discretion in not permitting Michael to introduce Jamie's and Dr. Roenning's testimony, and such error was clearly prejudicial, we need not discuss his Sixth Amendment allegations in respect to these earlier excluded pieces of evidence.

*By the Court.*—Decision of the court of appeals is reversed and the case is remanded for further proceedings in accordance with this opinion.

LOUIS J. CECI, J. *(concurring in part and dissenting in part).* I join section I.C. of the majority opinion. I agree with the majority's conclusion that the judge erroneously exercised his discretion by denying Michael R. B. the opportunity to present the testimony of Dr. Roenning. Such testimony was highly relevant and admissible in order to rebut Dr. O'Brien's testimony regarding the normal condition of an eight-year-old's hymen. I also agree with the majority that this error was prejudicial.

I disagree with, however, and reject the remainder of the majority opinion.