# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 12, 2024

**Samuel A. Christensen**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1377-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF992

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

COLTON C. SCHNEIDER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Eau Claire County: MICHAEL A. SCHUMACHER, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Colton C. Schneider appeals from a judgment convicting him, following a jury trial, of third-degree sexual assault, as a repeater. He also appeals from a circuit court order denying his postconviction motion for a new trial. Schneider argues that the State introduced evidence and argument at his sexual assault trial that are barred by the rape shield statute, WIS. STAT. § 972.11(2)(a)-(b) (2021-22).[1] Accordingly, Schneider asserts that he is entitled to a new trial based on plain error, based on the constitutionally ineffective assistance of his defense counsel, and in the interest of justice. For the reasons that follow, we agree that Schneider is entitled to a new trial due to there being plain error. We therefore reverse Schneider's judgment of conviction and the court's order denying his postconviction motion, and we remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The State charged Schneider with one count of third-degree sexual assault, as a repeater. According to the criminal complaint and the testimony at the one-day trial, Sally[2] alleged that on July 31, 2020, Schneider had sexual intercourse with her without her consent. Sally testified at trial that she and Schneider met online in June 2020 through a social networking application called "MeetMe." They began messaging each other every day—sometimes multiple times a day—through that app. They were "get[ting] to know each other fairly

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of the alleged victim's name. The State refers to the alleged victim as "Sally"; therefore, we will do so as well. We also use pseudonyms for Sally's mother and friend in this case.

well" when they first met in person for a walk in a park. The second time they met at the park, they kissed. They also visited each other's homes, and Sally stayed at Schneider's home overnight on one occasion.

¶3    On the date of the alleged assault, Sally's friend, Becky, dropped Sally and Schneider off at Lake Altoona, where they went swimming and went on the swing set. When it started to get dark, Sally testified that Schneider took her to the public changing rooms near the lake. There, Sally stated that they began "ma[king] out" by "[k]issing and fingering." According to Sally, Schneider "laid his towel on the concrete"; took all of Sally's clothing off, except for her bra; and then began having sexual intercourse with Sally, inserting his penis into her vagina until he ejaculated. Sally testified that the encounter lasted "five or ten minutes"; that she said "no, that [she] didn't want it" three times; and that Schneider did not respond and did not stop. It ended when Sally received a text message that Becky was coming back to get them.[3]

¶4    When Becky arrived, she noticed that Sally was "very quiet and reserved," which was out of character, while Schneider was "[v]ery lovey-dovey." Becky dropped Schneider off at his house, and Becky and Sally went to another friend's home. Eventually, Sally shared with Becky, by Facebook messenger, that something had happened. That message stated: "He put his thingy in me ooooooowwwwwyyyyyyy." Becky then "got really angry," and she called and texted Schneider "to see if he would fess up to it." Schneider messaged Becky that "[w]e tried doing shit but we talked about it" and that "[i]t didn't go inside her." Becky stayed the night at Sally's house, and the next morning they told

---

[3] Sally reported that she was holding her phone for at least part of the encounter.

Melissa, Sally's mother, what had happened. Melissa took Sally to the hospital for a sexual assault examination. Sally then reported the alleged sexual assault to police.

¶5 Melissa also testified at trial. She explained that she believed that Sally and Schneider were just friends and that they were not dating. In particular, the State asked Melissa about Sally's romantic history and whether she had discussed sex with Sally. Melissa testified she had asked Sally that "if she was thinking about having sex to let [Melissa] know ahead of time so that [she could] make sure [Sally was] on proper birth control and answer any other questions she might have." Melissa concluded, however, that Sally was "not ready" for sex because "[s]he's still waiting for Mr. Right."

¶6 A Sexual Assault Nurse Examiner (SANE) testified about Sally's forensic examination. According to the SANE, she observed no injuries that appeared to be related to a sexual assault. She also collected samples from Sally as part of the examination. A DNA analyst testified that a sperm fraction was found on Sally's vaginal and external genital samples, and Schneider was identified as the source of the sperm.

¶7 Detective Edward Bell testified that he interviewed both Sally and Schneider. According to Bell, Schneider "stated initially that [he and Sally] had only held hands and kissed," but he later admitted that they had sex. A portion of Schneider's recorded interview was then played for the jury, during which Schneider referred to Sally as a virgin and stated that he was her first boyfriend. Bell also testified that during Sally's interview, Sally said that she told Schneider to stop "twice or so" and that the sexual encounter lasted for three minutes.

¶8     After the close of the State's case, Schneider testified in his own defense. Schneider stated that he and Sally were dating during June and July 2020, and he considered them to be in a relationship. Schneider presented his version of the events that occurred on July 31, 2020. According to Schneider, he and Sally went to the changing room area where they were kissing for ten or fifteen minutes. Then, at some point, Sally "grabb[ed] onto [Schneider] and [pulled him] to the floor and then [got] on top" of him, which is when they had intercourse. Schneider explained that he told Becky that nothing happened between him and Sally because "sex is a very embarrassing subject to talk about in general." Schneider also testified that he originally did not tell Detective Bell the truth because he was "embarrassed and all that" because "[t]hat's usually a subject you talk to your significant other about."

¶9     On cross-examination, the State asked Schneider if he was Sally's first boyfriend and if Sally was a virgin, and he responded "[y]es" to both questions. The State referred to Sally as a virgin again when it asked Schneider the following question: "And it's your testimony that [Sally]—the quiet, shy virgin—got on top of you?" Schneider answered, "Yes."

¶10    Finally, during closing arguments, the State used the evidence of Sally's virginity to argue that Sally's version of the alleged sexual assault was more plausible. When comparing Schneider's version—i.e., that Sally was the instigator—to Sally's testimony, the State argued to the jury:

> You saw [Sally] on the stand. You heard testimony about her from her friend and from her mother. She's a quiet, shy 20 year old. When she met … Schneider she had never had a boyfriend. She was a virgin. There's one account that makes more sense than the other.

¶11    The jury found Schneider guilty of third-degree sexual assault. Thereafter, the circuit court sentenced Schneider to four years' initial confinement followed by five years' extended supervision.

¶12    Schneider filed a postconviction motion for a new trial. He moved the circuit court to vacate his judgment of conviction and grant him a new trial—based on plain error, ineffective assistance of counsel, and in the interest of justice—due to the State's introduction of improper evidence and argument that Sally was a virgin, both of which are barred by the rape shield statute. The State opposed the motion, arguing, among other things, that the testimony and argument related to Sally's virginity were admissible "as evidence of the complaining witness's past conduct with the defendant" "and evidence use[d] in determining the degree of sexual assault." *See* WIS. STAT. § 972.11(2)(b)1.-2.

¶13    The circuit court held an evidentiary *Machner*[4] hearing on the motion. Schneider's defense counsel was the sole witness. Counsel explained that he did not object to Melissa's testimony, to the video of Schneider's interview with police, or to Schneider's cross-examination because he did not believe that evidence implicated the rape shield statute. Counsel stated that he "remember[ed that] during the trial there was a question, [he] believe[d], asked of [Sally] regarding her virginity and [he] was going to object at that point." But "then [he] considered … what the implications of the objection would be and how it would

---

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

work in with the rest of the trial."[5]  According to defense counsel, he did not object because he did not want to call the jury's attention to the discussion.

¶14  Following defense counsel's testimony and the parties' arguments, the circuit court denied Schneider's motion on all grounds.  Relying on *State v. Mulhern*, 2022 WI 42, 402 Wis. 2d 64, 975 N.W.2d 209, the court first stated that the rape shield law "appl[ies] to a victim's virginity" and that none "of the statutory exceptions to the rape shield law apply here."  The court then determined that "some of [the statements] individually and then in a totality circumstance" amounted to "a violation of the rape shield statute."  Nevertheless, the court ultimately concluded that the State had proved, beyond a reasonable doubt, that Schneider was not harmed by this evidence or argument, or, in the alternative, that "the jury would have convicted … Schneider in the absence of any testimony about [Sally's] virginity."  Schneider appeals.

## DISCUSSION

¶15  "Wisconsin's rape shield law, WIS. STAT. § 972.11(2), generally prohibits a defendant like [Schneider] from introducing evidence concerning the alleged victim's prior sexual conduct."  *See State v. Carter*, 2010 WI 40, ¶39, 324 Wis. 2d 640, 782 N.W.2d 695 (footnote omitted).  Our supreme court has determined, on several occasions, that § 972.11(2)(b)'s broad reference to "any evidence concerning the complaining witness's prior sexual conduct" includes evidence of a lack of sexual activity.  *Mulhern*, 402 Wis. 2d 64, ¶¶30-34, 40-42, 53; *State v. Bell*, 2018 WI 28, ¶63, 380 Wis. 2d 616, 909 N.W.2d 750 ("Prior

---

[5] As noted by Schneider in his brief-in-chief and based on our independent review of Sally's testimony, Sally was never asked about her virginity.

7

sexual conduct includes a lack of sexual conduct, meaning that evidence that a complainant had never had sexual intercourse is inadmissible."); *State v. Gavigan*, 111 Wis. 2d 150, 159, 330 N.W.2d 571 (1983), *superseded by statute*, § 972.11(2)(c).[6] The statute's prohibition also extends to *indirect* references to a complainant's lack of sexual experience or activity. *Bell*, 380 Wis. 2d 616, ¶63 (citing *Gavigan*, 111 Wis. 2d at 159). "Evidence of this nature is prohibited because it 'is generally prejudicial and bears no logical correlation to the complainant's credibility.'" *Id.* (citation omitted). The Wisconsin Legislature enacted the rape shield law "to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations." *State v. Dunlap*, 2002 WI 19, ¶19, 250 Wis. 2d 466, 640 N.W.2d 112.

¶16 On appeal, Schneider argues that evidence of Sally's virginity, including Melissa's testimony regarding Sally's "readiness to have sex," was barred by the rape shield statute. Schneider repeats his assertions that he is entitled to a new trial based on plain error, ineffective assistance of counsel, or in the interest of justice. The State, for its part, does not dispute that evidence regarding Sally's virginity was barred by the rape shield statute.[7] It argues,

---

[6] In *State v. Gavigan*, 111 Wis. 2d 150, 159, 330 N.W.2d 571 (1983), our supreme court stated that "the plain meaning of the words 'prior sexual conduct' includes the lack of sexual activity as well." However, as the court later explained in *State v. Mulhern*, 2022 WI 42, 402 Wis. 2d 64, 975 N.W.2d 209, "despite this pronouncement [in *Gavigan*] … we allowed evidence of the victim's virginity in regard to proof of lack of consent" and "fashioned a test that would allow evidence to come in" if it met certain conditions. *Mulhern*, 402 Wis. 2d 64, ¶¶24-25 (citation omitted). "Following *Gavigan*'s court-made exception, the legislature amended WIS. STAT. § 972.11(2) by adding para. (c)" to "limit[] the court from expanding the exceptions to § 972.11(2)(a) beyond those provided by the legislature in § 972.11(2)(b)." *Mulhern*, 402 Wis. 2d 64, ¶26.

[7] Although the State argued before the circuit court that exceptions to the rape shield statute, under WIS. STAT. § 972.11(2)(b)1.-3., applied to the evidence concerning Sally's virginity, the State does not appear to argue the applicability of any of these exceptions on appeal.

however, that Melissa's testimony did not implicate the rape shield statute. Regardless, the State contends that Schneider is not entitled to a new trial on any of the above bases given the strength of the State's case.

¶17    We agree with the parties that evidence of Sally's virginity falls within the scope of the rape shield statute. Thus, the State violated the statute when it presented evidence of Sally's virginity and argued that her status as a virgin made her testimony more plausible than Schneider's testimony. Given that Schneider's defense counsel failed to object during the trial to the video of Schneider's police interview, to any of the prohibited testimony, or to the State's closing argument, we apply the plain error doctrine. For the reasons that follow, we conclude that Schneider is entitled to reversal.[8]

¶18    We first address the applicability of the rape shield law to the evidence admitted at Schneider's trial. WISCONSIN STAT. § 972.11(2)(b) provides:

> (b) If the defendant is accused of a crime under [the enumerated statutes or if a circuit court finds that the crime was sexually motivated], any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to [WIS. STAT. §] 971.31(11):
>
>     1. Evidence of the complaining witness's past conduct with the defendant.
>
>     2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or

---

[8] Because our resolution of this appeal on plain error grounds is determinative, we do not address Schneider's remaining arguments regarding ineffective assistance of defense counsel or reversal in the interest of justice. *See **Sweet v. Berge**,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983).

9

disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

The statute defines "sexual conduct" as "any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style." Sec. 972.11(2)(a). "[T]he limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness … applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b)1., 2. or 3." Sec. 972.11(2)(c).

¶19     It is undisputed that during Schneider's trial, the State introduced improper evidence and argument that Sally was a virgin in violation of the rape shield statute. The specific instances included: (1) the video of Schneider's interview with police, where he stated, "Considering that she is a virgin and … I was her first boyfriend"; (2) Schneider's cross-examination, where the State asked whether Sally was a virgin and confirmed that Schneider's testimony was that Sally, "the quiet, shy virgin," got on top of him; and (3) the State's closing argument, where it argued that "[Sally] was a virgin" and that "[t]here's one account that makes more sense than the other."

¶20    The State does contest, however, that Melissa's testimony—that Sally was not "ready" to have sex—was barred under the statute.[9]  According to the State, "[Melissa] never said Sally was a virgin nor did she give any opinion about Sally's prior sexual conduct or reputation for such conduct."  Instead, the State claims that the testimony presented at trial was Melissa's "own discussions with [Sally] about sex generally, and [Melissa's] view of Sally's developmental and emotional maturity level—it was background information that gave relevant and appropriate context to the change in Sally's demeanor and to [Melissa]'s response" to hearing about the sexual assault.

¶21    The testimony elicited from Melissa at trial was as follows:

Q. Has [Sally] had a lot of boyfriends?

A. No.

Q. Did you talk to [Sally] about sex?

A. Yes.

Q. What would you talk about?

A. To make sure that she—before she has it that she has the right person that she wants to spend the rest of her life with and she trusts that person before she has sex, and if she was thinking about having sex to let me know ahead of time so that I can make sure she's on proper birth control and answer any other questions she might have.  We talked about what to expect and it should be an enjoyable thing and something special shared between two people.

Q. Did [Sally] ever tell you that she was ready to have sex?

---

    [9] Citing WIS. STAT. § 972.11(2)(d)2., Schneider argues that the "[S]tate failed to litigate [the admissibility of this evidence] pre-trial, so it has waived any argument that this evidence was admissible under exceptions to the rape shield statute at this point in litigation."  Given that we are reversing and remanding for further proceedings, we will address whether Melissa's testimony implicated the rape shield statute, as the question may reoccur on remand.

> A. She has not told me that yet. She's not ready. She's still waiting for Mr. Right.

¶22 We conclude that Melissa's testimony implicated the rape shield statute. While the State is correct that this was testimony about whether Melissa thought Sally was "emotionally and mentally prepared to have consensual sexual intercourse," Melissa's testimony was also clearly evidence of Sally's lack of sexual activity. *See Mulhern*, 402 Wis. 2d 64, ¶53. For example, Melissa testified that she told Sally to be sure that "before she has" sex, that she is with "the right person that she wants to spend the rest of her life with"; that Sally was not ready to have sex; and that "[Sally]'s still waiting for Mr. Right." As our supreme court previously explained, "That the word virgin was not used is immaterial. The statement clearly conveyed to the jury that the complainant was a virgin." *Gavigan*, 111 Wis. 2d at 159. At the very least, Melissa's testimony indirectly referenced Sally's virginity. *See Bell*, 380 Wis. 2d 616, ¶63. The State cannot circumvent that fact by claiming another purpose for the admission of Melissa's testimony.[10] *See* WIS. STAT. § 972.11(2)(c).

¶23 Given the State's concession and our above conclusion, we next address whether the admission of the improper evidence and the State's closing argument warrant reversal. As noted, Schneider's defense counsel failed to object to any violations of the rape shield statute at trial. Under the plain error doctrine,

---

[10] The State's only other argument on this point is that "the context makes clear that [the testimony in question] was [Melissa's] opinion about [Sally]'s state of mind and was innocuous at best; jurors would know through common sense and experience that young people frequently aren't comfortable telling their parents about their sexual experiences. This statement likely carried little weight." We are not persuaded by the State's assertion because it lends itself to a harmless error argument—i.e., the statement "likely carried little weight"—rather than an argument that the testimony did not violate the rape shield statute.

WIS. STAT. § 901.03(4),[11] a conviction may be vacated when an unpreserved error is fundamental, obvious, and substantial. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. "We employ this doctrine sparingly." *Bell*, 380 Wis. 2d 616, ¶12. "[T]he existence of plain error will turn on the facts of the particular case." *State v. Mayo*, 2007 WI 78, ¶29, 301 Wis. 2d 642, 734 N.W.2d 115. No bright-line rule for what constitutes plain error exists. *Id.* Nevertheless, "[t]he quantum of evidence properly admitted and the seriousness of the error involved are particularly important." *Jorgensen*, 310 Wis. 2d 138, ¶22.

¶24    "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." *Id.*, ¶23. To determine whether an error was harmless in this case, we consider whether the State can prove "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]" *Mayo*, 301 Wis. 2d 642, ¶47 (citation omitted). Our supreme court has identified several factors to assist in making this determination:

> (1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case.

---

[11] WISCONSIN STAT. § 901.03(1)(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and, "[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Section 901.03(4), in turn, provides: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

*Jorgensen*, 310 Wis. 2d 138, ¶23. If the State fails to meet its burden to prove that the error was harmless, then we may conclude that the error constitutes plain error. *Id.* We independently review the record to determine if a new trial is warranted due to plain error. *Mayo*, 301 Wis. 2d 642, ¶28; *see also* ***Bell***, 380 Wis. 2d 616, ¶8 (explaining that where the plain error involves the violation of a constitutional right, the issue presents a question of law that we review de novo).

¶25 Aside from its arguments regarding Melissa's testimony and its harmless error analysis, the State does not appear to specifically dispute that the rape shield statute violation in this case was fundamental, obvious, and substantial. Schneider, for his part, argues that "introducing this evidence at trial, improperly infringed on [his] fundamental right to due process under both the Wisconsin and [United States] Constitutions." *See* U.S. CONST. amend. XIV, § 1; WIS. CONST. art. I, § 8. Schneider claims that he was "convicted based on improper and highly prejudicial character evidence that clouded the main issue in this case—whether there was consent—[and] deprived him of those due process rights to a fair trial."

¶26 We agree and conclude that Schneider has shown that the error in this case was fundamental, obvious, and substantial. Here, the evidence was introduced several times throughout Schneider's trial through different witnesses, the State then highlighted the improper evidence during its closing argument, and the State specifically used the inadmissible evidence during its closing to bolster Sally's credibility—a central issue in the case. Thus, introducing evidence that Sally was a virgin was not merely an insignificant mistake by the State. We agree with Schneider that the improper evidence was prejudicial, was not correlated to Sally's credibility, and may have allowed the jury to draw improper conclusions. Accordingly, the State's evidentiary errors substantially impaired Schneider's right to a fair trial. Finally, given that the case law in Wisconsin is well settled on

this issue, *see Mulhern*, 402 Wis. 2d 64, ¶¶30-34, 40-42, the error in this case should have been "clear [and] obvious" to all involved, *see State v. Lammers*, 2009 WI App 136, ¶12, 321 Wis. 2d 376, 773 N.W.2d 463.

¶27    Given that Schneider has met his burden, we next consider whether the error was harmless. We emphasize that this is a very close case. Nevertheless, "[e]rroneously admitted evidence may tip the scales in favor of reversal in a close case, even though the same evidence would be harmless in the context of a case demonstrating overwhelming evidence of guilt." *Jorgensen*, 310 Wis. 2d 138, ¶22 (citation omitted). Under the circumstances and the particular facts of this case, we are not convinced, beyond a reasonable doubt, that a rational jury would have convicted Schneider absent evidence that Sally was a virgin. *See id.*, ¶23.

¶28    Considering the harmless error factors,[12] we conclude that the first factor—the frequency of the error—weighs in favor of reversal. On appeal, the State claims that "the error was not frequent" because "[n]one of the State's six witnesses said anything at all about Sally being a virgin or were questioned about it by either the State or the defense, including Sally." The State is incorrect. As determined previously, Melissa's testimony addressed Sally's virginity, and the State used Detective Bell's testimony to present evidence from Schneider's interview addressing that subject.

¶29    We also agree with Schneider that "[t]he [S]tate's position that the errors were infrequent neglects to look at the frequency in the context of this

---

[12] The parties both agree that harmless error factors three and four—the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence and whether the erroneously admitted evidence duplicates untainted evidence—are not relevant here. Thus, following the parties' lead, we will not address them further.

case." The State fails to acknowledge that this was a one-day trial. During that one day, the State presented improper evidence and argument in violation of the rape shield statute *five times*: Melissa's testimony, the video during Bell's testimony, two questions during Schneider's cross-examination, and the State's closing argument. As Schneider argues, "The errors permeated a very short trial, starting with the [S]tate's case in chief, continuing through the defense case, and into closing arguments."

¶30 The second factor—the importance of the erroneously admitted evidence—also weighs in favor of reversal. The State claims that the improper evidence and argument about Sally's virginity were not important because "the issue here was whether Sally consented to the intercourse or not, which was emphasized for the jury repeatedly," and "[j]urors know through common sense and experience that a virgin can consent to sex." However, the fact that this case was about consent, and not whether sexual intercourse occurred, is precisely why the improper evidence that Sally was a virgin was important. As Schneider argues, "the [S]tate explicitly used this evidence to argue that [Sally's] account was more believable, more plausible than Mr. Schneider's, because she was a virgin." Clearly, the State felt that this evidence was important to its case because it brought up the improper evidence five times during the trial, including during its closing argument.

¶31 The final three related factors—the nature of the defense; the nature of the State's case; and the overall strength of the State's case—further weigh in favor of reversal. The State claims that "the evidence in this case was extremely strong for this type of sexual assault" because "Sally reported the incident almost

immediately and spontaneously texted her friend [Becky] the evening of the assault that Schneider had intercourse with her";[13] "Schneider's semen was found in Sally's vagina"; and "[t]he jury heard about Sally's change in demeanor after the assault—her sadness, mistrust of men, and ongoing nightmares."

¶32    We disagree with the State's assessment of the strength of its case. At its core, this was a "he-said, she-said" case. Sally asserted that Schneider sexually assaulted her; Schneider claimed that they had consensual sex. Beyond Schneider and Sally, there were no other witnesses to the actual act of sexual intercourse. Despite the State's argument, the fact that semen was found during Sally's sexual assault examination is inconsequential because Schneider does not claim that intercourse did not occur. The State may insist that Sally's demeanor after the incident establishes the truth of her sexual assault report, but her behavior could just as easily be explained by emotions resulting from having sex for the first time, fear of her mother finding out, and/or the trauma of a sexual assault examination. The case boils down to whether Sally gave consent; thus, the credibility of both Sally and Schneider was on trial.

¶33    Sally's credibility was improperly bolstered by evidence that she was a virgin. Both during the State's closing argument—when it asked the jury to consider whether Sally's or Schneider's version of what happened was more plausible given that Sally was a virgin—and during Schneider's cross-examination—when it questioned the believability of Schneider's testimony

---

[13] We observe that in the text conversation between Sally and Becky that evening, Sally said that Schneider "put his thingy in me," but she did not initially say that it was without her consent. Becky appeared to immediately assume that Sally did not consent when she responded, "And you said no?! That's rape." Only then did Sally respond, "Ya [I] said no but hopefully it won't happen again."

because of Sally's virginity—the State utilized improper evidence to support Sally's credibility and strengthen its case. Thus, it is clear that the State's reliance on this evidence was not inconsequential.

¶34    As the parties both argue, Sally's and Schneider's testimony had varying degrees of inconsistencies.[14]    Sally gave inconsistent information regarding whether she told Schneider to stop and the number of times she did so, the length of the incident, whether she was holding her phone during the encounter, and whether she had previously been romantic with Schneider. Schneider first denied to Becky and Detective Bell that the encounter with Sally occurred, but he then acknowledged that the two had sexual intercourse. The jury was tasked with determining whom to believe.

---

[14]  The State argues that

> [t]he postconviction judge was the same judge who presided over the jury trial, and he found Sally "very credible in her conduct and demeanor on the stand. She was clear about what she says happened. There was no evidence about some axe to grind, in other words some motivation to make this up."

The circuit court also believed that Schneider was less credible. Consequently, the State, citing **State v. McCallum**, 208 Wis. 2d 463, 479-80, 561 N.W.2d 707 (1997), argues that the court was "in a prime position to assess the credibility and demeanor of the witnesses" and that "[i]ts findings that Sally's testimony was credible and Schneider's was not are unassailable on appeal."

We disagree that the circuit court's credibility findings dictate a certain result on appeal. First, assessing harmless error presents a question of law that we review de novo. **State v. Bell**, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750; **State v. Ziebart**, 2003 WI App 258, ¶26, 268 Wis. 2d 468, 673 N.W.2d 369. Second, the court was not the fact finder in Schneider's trial. The jury was charged with weighing and determining credibility. Thus, we are not bound by the court's credibility determination when considering whether the evidentiary error at issue here was harmless. *Cf.* **State v. Jenkins**, 2014 WI 59, ¶64, 355 Wis. 2d 180, 848 N.W.2d 786 ("In assessing the prejudice caused by the defense trial counsel's performance, i.e., the effect of the defense trial counsel's deficient performance, a circuit court may not substitute its judgment for that of the jury in assessing which testimony would be more or less credible." (formatting altered)).

¶35     Essentially, the State used the fact that Sally was a virgin as character evidence—i.e., because she was a virgin she would be less inclined to consent to sexual intercourse—to corroborate her version of events. *See **State v. Stroik***, 2022 WI App 11, ¶38, 401 Wis. 2d 150, 972 N.W.2d 640 ("A 'propensity inference' is the inference that a person acted 'in conformity with a particular character trait' on a specific occasion." (citation omitted)).  One only needs to reverse those facts to see how problematic the State's actions really were in this situation.  *Cf.* ***Heath v. State***, 849 P.2d 786, 788 (Alaska Ct. App. 1993) (explaining that the "argument (that virgins are less likely to consent) silently rests on [the] forbidden proposition" that "the rape shield law was designed to forestall—that people who have sexual experience are more likely to consent to a particular act of sexual intercourse").  We agree with Schneider that evidence of Sally's virginity "had no other purpose than to influence the outcome by 'improper means.'"  *See **Bell***, 380 Wis. 2d 616, ¶63.

¶36     For these reasons, we conclude that the error in admitting the evidence and argument regarding Sally's virginity was fundamental, obvious, and substantial, and the State failed to meet its burden to prove, beyond a reasonable doubt, that a rational jury would have found Schneider guilty absent these admissions.  *See **Mayo***, 301 Wis. 2d 642, ¶47.  Therefore, we conclude that the admission of the improper evidence and argument constitutes plain error.  Accordingly, we reverse Schneider's third-degree sexual assault conviction and remand for further proceedings consistent with this opinion.

*By the Court*.—Judgment and order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.